**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Case No. EP-11-CR-2728-KC-1** |
| | ) | |
| **ANGEL OCASIO** | ) | |

**MOTION TO COMPEL PRODUCTION OF MATERIALS PERTAINING TO**
**PEER-TO-PEER INVESTIGATIVE SOFTWARE**

Defendant, Angel Ocasio, moves to compel production of materials pertaining to the investigative software known as 'CPS' utilized in searching computers in Texas as identified and described in the affidavit filed in support of the application for search warrant executed in this case.   The following is offered in support of the present Motion:

**I.  INTRODUCTION**

Mr. Ocasio has filed his Motion to Suppress challenging the validity of the search warrant executed in this case because it is evident that the showing of probable cause in this case rests on the Government's assertion that it was able to determine that three files on Mr. Ocasio's computer contained child pornography.  Yet, as a close reading of the affidavit of Tami Loehrs offered in support of the Motion to Suppress demonstrates, the basis for this assertion is questionable, is presented in a misleading fashion, and omits crucial information.  In  actuality, investigators only determined that the three files on Mr. Ocasio's  computer were associated with so-called hash values that matched hash values in a government database or library.[1]

---

[1] The Government, in its Response to the Motion to Suppress, does not claim to have downloaded or otherwise obtained the actual child  pornography files from the IP address associated with Mr. Ocasio.  Probable cause therefore rests on the ability of the Government's software to accurately identify suspected child pornography files without actually seeing it. Here, the Government urges that its software can match an attribute of suspected child pornography—the so called SHA-1 hash value of a file—with the same attribute of known child

Investigators did not actually examine the files thought to be on Mr. Ocasio's computer to determine that they actually contained child pornography.  Moreover, because of the way that peer-to-peer software works, incomplete, partial, empty, corrupted  and deleted files will often be displayed as being available for download  and will display the hash value of the completed, uncorrupted, and  undeleted files.  As the government acknowledges in its FTK Report, none of the files identified and detailed were discovered on Mr. Ocasio's computer once it was searched. This fact makes it impossible to conclude that the government was capable of identifying file contents based on the hash value of these non-existent files now representing the foundation of the affidavit offered in support of the search warrant.  None of these facts are reported in the affidavit supporting the search warrant, and the absence of this exculpatory information is fatal.

Mr. Ocasio's Motion to Suppress argues further that the software utilized by the Government functions in a manner that amounts to a warrantless search of an individual's computer that is illegal under the Fourth Amendment.

In order to prepare for any suppression hearing, Mr. Ocasio has requested the production of the software and supporting manuals used in the process of searching computers in the Western District of Texas as identified and described by the affidavit offered in support of the search warrant application.  Mr. Ocasio has also sought training materials for the software through his Motion to Strike, to counter any claimed good faith reliance on the software. The Government, during the April 4, 2013, and its Response to the Motion to Suppress, Resp. Mot. Suppress @ 10 n.4, has confirmed the Department of Justice's position of non-disclosure based on the proprietary nature of the software.

_____

pornography.

In the present case, Mr. Ocasio challenges the basis for the Government's claim that probable cause existed to obtain a search warrant and argues that the affidavit detailing the investigation contains significant errors and omissions regarding the operation of software used by the Government to gather evidence.  Mr. Ocasio also claims that the software used by the Government to conduct its initial investigation operates in a manner that amounts to a warrantless search of an individual's computer that is illegal under the Fourth Amendment. Central to both claims is the functioning of the software used by the Government in its investigation.  Mr. Ocasio' claims regarding the manner in which the software gathers information  from peer-to-peer programs makes the functioning of the software "material to preparing the  defense."  Mr. Ocasio and his expert need access to the software in order to determine or develop  a number of facts, including:

•       How the government's software program gathers information, including hash values and information related to incomplete, partial, empty, or deleted files.

•       Whether the software functions in an accurate and reliable manner.

•       Whether the affiant's claims regarding the software set forth in the affidavit filed in support of the application for search warrant are accurate.

•       Whether an agent may claim good faith reliance on investigative software with known defects that represent repeated violations of Fourth Amendment rights.

It is only through an examination of the software and supporting materials that the Government's contentions may be tested through cross-examination and the true operation of the software determined.  The requested discovery is thus material to  preparing Mr. Ocasio's defense and should be produced.

3

## II.  LEGAL ANALYSIS

The materials sought in this case are discoverable under Federal Rules of Criminal Procedure 16(a)(1)(E) and (F).  Their production is also mandated by the Fifth and Sixth Amendments to the United States Constitution as embodied in the Supreme Court's decision in *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972).  This Court has directed production of the same through paragraph A(4) of its Standing Discovery Order (Doc. No. 15).[2]  Finally, as a necessary concomitant of the present Motion to Suppress, and to the extent Rule 16 does not direct production, this Court is empowered to order production as an appropriate exercise of its inherent authority.  *See Degen v. United States*, 517 U.S. 820, 823-24 (1996)(holding courts "have certain inherent authority to protect their proceedings and judgments in the course of discharging their traditional responsibilities").

Count Two charges that Mr. Ocasio did "knowingly distribute and attempt to distribute child pornography."  (Doc. No. 9).  As the affidavit supporting the Complaint (Doc. No. 1) has made clear since the outset, the theory of distribution in this case rests exclusively on peer-to-peer transmission.  Any deficiencies in the investigative software used to identify peer-to-peer transmissions that might disprove either actual distribution or attempted distribution of child pornography would be "material[3] to preparing the defense," FED. R. CRIM. P. 16(a)(1)(E), and

---

[2]To the extent this Court's Standing Discovery Order did not direct production, the materials now sought were demanded through the Motion to Strike and/or Compel Production (Doc. No. 115), and later demanded on the record in open court on April 4, 2013.

[3]Evidence is considered 'material' when it would be helpful to the defense in preparing for trial.  *United States v. De Los Santos*, 810 F.2d 1326, 1330 (5th Cir. 1987).

4

thereby subject to disclosure by the Government.[4]  These deficiencies would similarly be

considered exculpatory, and thereby subject to disclosure under *Brady*.  Finally, to the extent

production is sought as an exercise of this Court's inherent authority, the anomalies identified in

this case in Ms. Loehrs's affidavit filed in support of the Motion to Suppress, and her experience

with inconsistencies generally encountered when conducting forensic examinations in cases

involving peer-to-peer investigative software, provides a sufficient factual basis through which

this Court may question whether this software works as advertised in limiting its sweeps of peer-

to-peer networks to public shared folders rather than an intrusion into non-public areas of a

computer.

The substance of this request was previously addressed is *United States v. Budziak*, 697

F.3d 1105 (9th Cir. 2012).  In *Budzniak*, which addressed a denial of motions to compel

discovery directed to peer-to-peer investigative software, the Ninth Circuit found motions to

compel that addressed (1) disclosure of the peer-to-peer investigation program and its technical

specifications, (2) specific defenses to the distribution charge that discovery on the peer-to-peer

investigation program could potentially help a defendant develop, (3) evidence suggesting that

the FBI may have only downloaded fragments of child pornography files from an "incomplete"

folder, making it "more likely" that he did not knowingly distribute any complete child

---

[4]Federal Rule of Criminal Procedure 16(a)(1)(E) requires the production of "books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within  the government's possession, custody, or control and: (I) the item is material to preparing the defense; (ii) the government intends to use the item in its case-in-chief at trial."  Mr. Ocasio respectfully submits that the software program sought as well as the supporting documentation and testing information all fit well within the Rule 16(a)(1)(E)'s requirement that  "books, papers, documents, data, photographs, tangible objects" that are material to preparing the defense be produced.

pornography files to agents, and (4) evidence that the peer-to-peer software to override share settings more than sufficient to raise the discovery request beyond mere speculation.  *See id.* at 1112.  The Ninth Circuit ultimately held that the trial court erred in declining to permit review the software in question, and remanded the case for purposes of a review of the materials sought as necessary to determine whether the requested material may have affected the jury's deliberations.  *Id.* at 1113.  In this case, presented with Ms. Loehrs history specific to peer-to-peer investigative software, an affidavit specifically focusing on three computer files not identified on the subject computer, and the specific principles applicable to peer-to-peer file sharing articulated by Ms. Loehrs in her affidavit, Mr. Ocasio has similarly satisfied his burden in requesting an order compelling production of the details of this investigative software.

      With regard to an order to compel based on an exercise of this Court's inherent authority, it suffices to say that the Government, in its Response, has offered repeated declarations on the functioning of CPS and has gone so far as to offer exhibits representing its purported operation. These references were identified in the Motion to Strike (Doc. No. 115), and are incorporated herein by reference.  As counsel for the Government has made the entirety of CPS, to include training materials, manuals, product updates and core functions, an issue through these selective responses when convenient, yet elects to invoke the proprietary nature of CPS when apparently problematic in lieu of a specific response, it is well within this Court's authority to compel a complete response and thereby avoid the likely injustice resulting from the Government's exclusive possession of this investigative tool and refusal to disclose complete and accurate factual information in its Response.

## III. CONCLUSION

For the reasons stated above, Mr. Ocasio respectfully requests that this Court order the

Government to produce:

1.   The source code of the program identified in the affidavit as 'CPS', as well as the source code of any associated programs used to conduct the search in this case.  This source code will include any an all commentary included by the programmers.
2.   A compiled and fully functional version of any and all software identified in the prior request as implemented by the source code.
3.   Technical manuals for any and all software implicated by this investigation, to exclude operating systems and commercially available 'helper' applications for the proprietary software, such as Adobe, Internet Explorer, or the Microsoft Office suite.
4.   Training materials presented to the federal government for the previously mentioned software.
5.   Details of any software training conducted by the federal government prior to use of any software identified herein, whether designed by the manufacturer or the federal agency.
6.   Periodic updates for any software implicated by this request provided to the federal government by the software manufacturer, to include 'bug' fixes, notices directed to software operations or warnings as to known deficiencies in the software.
7.   Any information in whatever form, source or nature, which tends to  cast doubt on the usefulness, reliability or accuracy of the software identified in identifying suspect child pornography, or which in  anyway suggests that the software operates differently than a manual search.
8.   A copy of any FAQs (frequently asked questions) directed to the software produced by the manufacturer, if not included in the source code or with the functioning program.
9.   And, should the proprietary nature of the software be raised by the Government in objection, a complete copy of the contract entered into between the federal government and the manufacturer.

Very truly yours,

MAUREEN FRANCO
Federal Public Defender
  /s/
MICHAEL GORMAN
Assistant Federal Public Defender
Western District of Texas
Federal Building
700 E. San Antonio, D-401
El Paso, Texas 79901
(915) 534-6525

7

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of April, 2013, I electronically filed the foregoing with the Clerk of Court using CM/ECF system which will send notification of such filing to the following:

J. Brandy Gardes
Assistant U. S. Attorney
700 E. San Antonio, Suite 200
El Paso, Texas 79901

/s/
_____
Michael Gorman
Attorney for Defendant

**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Case No. EP-11-CR-2728-KC-1** |
| | ) | |
| **ANGEL OCASIO** | ) | |

**ORDER**

On this date came to be heard Defendant's Motion to Compel Production of Materials

Pertaining to Peer-to-peer Investigative Software.  After considering the same, the Motion is

hereby GRANTED.

It is therefore ORDERED that the Government shall produce the following for review by

Defendant:

1.  The source code of the program identified in the affidavit as 'CPS', as well as the source code of any associated programs used to conduct the search in this case.  This source code will include any an all commentary included by the programmers.
2.  A compiled and fully functional version of any and all software identified in the prior request as implemented by the source code.
3.  Technical manuals for any and all software implicated by this investigation, to exclude operating systems and commercially available 'helper' applications for the proprietary software, such as Adobe, Internet Explorer, or the Microsoft Office suite.
4.  Training materials presented to the federal government for the previously mentioned software.
5.  Details of any software training conducted by the federal government prior to use of any software identified herein, whether designed by the manufacturer or the federal agency.
6.  Periodic updates for any software implicated by this request provided to the federal government by the software manufacturer, to include 'bug' fixes, notices directed to software operations or warnings as to known deficiencies in the software.
7.  Any information in whatever form, source or nature, which tends to  cast doubt on the usefulness, reliability or accuracy of the software identified in identifying suspect child pornography, or which in  anyway suggests that the software operates differently than a manual search.
8.  A copy of any FAQs (frequently asked questions) directed to the software produced by the manufacturer, if not included in the source code or with the functioning program.

9

9.      And, should the proprietary nature of the software be raised by the Government in objection, a complete copy of the contract entered into between the federal government and the manufacturer.


It is further ORDERED that these materials shall be produced to Defendant for review not later than _____.

ORDERED and ENTERED on this the _____ day of April, 2013.

SO ORDERED.


_____
KATHLEEN CARDONE
UNITED STATE DISTRICT JUDGE