IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. EP-11-CR-2728-KC-1 |
| | ) | |
| ANGEL OCASIO | ) | |

MOTION FOR RECONSIDERATION OF ORDER OF APRIL 26, 2013

Defendant, Angel Ocasio (hereinafter "Mr. Ocasio), hereby respectfully moves for reconsideration of this Court's April 26, 2013 Order (Doc. No. 122), and asks that the relief sought through the Motion to Compel be granted in full.  In support thereof, he would respectfully show as follows:

I.    INTRODUCTION

The Motion to Suppress filed in this case addresses two specific legal issues: (1) a warrantless search conducted prior to the physical search and seizure in this case by a system now known as Child Protective System (CPS) and (2) a *Franks* issue arising in the drafting of the affidavit offered in support of the application for search warrant filed in this case.  The former issue is a global problem involving a computer program allegedly owned and operated by TLO, LLC, whereas the latter issue is a local problem involving the agents in this case.

The Motion to Compel filed in support of the Motion to Suppress sought production of information and materials specific to CPS on two legal grounds: (1) Federal Rule of Criminal Procedure 16, as generally pertaining to trial matters, and (2) as an appropriate exercise of this Court's inherent authority in conjunction with the present Motion to Suppress.[1]

_____

[1]While the Order reasons that discovery is limited based on Rule 16 in the context of trial preparation, which counsel argues is not the case, it does not address why the requested material may not be ordered, in the absence of federal rule and in the context of a motion to suppress

In an apparent effort to address the *Franks* issue, the Government offered in its Response to the Motion to Compel the affidavit of William Wiltse, the Director of Law Enforcement Programming at a 'private' corporation, TLO, LLC.  Wiltse Aff. ¶ 2.  Mr. Wiltse offers the following declarations: (1)   TLO is a "private corporation:; (2) he developed CPS, *id.* ¶ 3; (3) he instructs law enforcement officers on the operation of CPS, *id.*; (4) law enforcement officers merely 'access' CPS, *id.*; (5) suspects systems are identified through the TLO servers located in Boca Raton, Florida, *id.* ¶ 4; (6) CPS itself executes search terms utilized by criminal investigators when searching for child pornography, *id.* ¶ 5; (7) TLO holds the copyright for CPS application source code, *id.* ¶ 8; (8) the source code for CPS has never been distributed to law enforcement agencies, and is inaccessible by participating law enforcement agencies, *id.*, and (9) all participating law enforcement agencies transmit information directly to TLO in Florida, *id.* ¶ 9.  TLO does not advertise CPS as a product on its public Web site, http://www.tlo.com/, and the nature of CPS and involvement with federally restricted information and materials pursuant to 18 U.S.C. § 3509, suggests that its use is limited to law enforcement entities conducting searches of the very type at issue in the present Motion to Suppress.  In short, there is no private, non-law enforcement application of CPS as the result of any search is the identification of restricted material legally handled only by State or federal law enforcement officers and agencies.

In addition to this information specific to CPS, Wiltse also offered personal information, specifically he (1) is a former Oregon police officer, now retired, who investigated the very offenses CPS is designed to investigate, and (2) is a current reserve sheriff in Palm Beach

---

rather than trial preparation, as an appropriate exercise of this Court's inherent authority, which undersigned counsel submits is the more legally sound basis for such an order.

County, Florida.  *Id.* ¶ 1.  Wiltse therefore does not deny employment history and an ongoing personal interest in the subject matter present investigation, as would be expected from a neutral private endeavor.

In its Order, this Court concludes that (1) TLO is a private entity not subject to an order compelling disclosure of the information requested in the Motion to Compel because the items requested are "not under the government's control," Order at 4, and (2) consistent with an order issued in *United States v. Neale*, 5:12-CR-44, a live demonstration conducted by the CPS system developer is sufficient, *id.* at 5.  This Court is now respectfully asked to reconsider its Order.[2]

## II.    TLO IS IN FACT THE GOVERNMENT FOR PURPOSES OF RULE 16

This Court concludes that "control sufficient for Rule 16(a)(1)(E) appears to exist only if the government has a legal right to obtain the documents and items upon demand," Order at 122, and that "Mr. Ocasio provides no case law that suggests otherwise. Moreover, Mr. Ocasio has provided no case law suggesting that investigative software owned and operated by a third party is subject to disclosure under Rule 16(a)(1)(E)."[3]  *Id.* n.1.  For purposes of the Rule 16 analysis, it is respectfully submitted that a third party contracted to conduct federal investigations by computer which, by statute, are limited to federal law enforcement agencies, is a *de facto*

---

[2]In the event this Court declines to reconsider its Order, and with the corporate details provided in the Government's Response and supporting materials and following the Government's invitation in its Response to do so, a subpoena has been directed to TLO, LLC demanding the materials held unavailable through this Motion to Compel.

[3]This Court is asked to consider how frequently it has encountered the present scenario, given the information summarized by Wiltse regarding TLO and the extent of involvement of this corporation in ongoing federal investigations.  It is respectfully submitted that the present degree of outsourcing represents a novation, thus this Court is asked to decide an issue that may find few parallels with existing precedent.  Further, a lack of case law is not dispositive as to any legal issue; especially, a novel issue that is premised upon statutory authority.

government agent subject to the full range of Rule 16 disclosure mandates.  Assuming *arguendo* this were not the case, then the absolute authority exercised by this third party, TLO, over CPS, and its involvement in the search giving rise to the search warrant application in this case, unquestionably permits the disclosure requested as an appropriate exercise of this Court's inherent authority in light of the issues raised in the present Motion to Suppress.

It is settled law that "[a]lthough the Fourth Amendment does not apply to a search or seizure, even an arbitrary one, effected by a private party on his own initiative, the Amendment protects against such intrusions if the private party acted as an instrument or agent of the Government."  *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 614 (1989).  Any claims of immunity to disclosure begin and end on this simple statement.  In offering an affidavit that attempts to distance the local federal agents from CPS for purposes of the *Franks* argument, essentially characterizing the local component of CPS as a brainless display no different than a television screen, TLO has unquestionably assumed the primary investigative role prior to the execution of the search warrant in this case.  Given the contractual obligation TLO establishes with the federal government and the Department of Homeland Security through production of its contract, it is clear TLO (1) analyzed, (2) sorted and (3) displayed all information specific to the computer files identified in the search warrant.  As it may not legally assume this role without the consent of the federal government, it is a federal agent, not an independent corporation with no stake in this investigation.  Given what amounts to a complete outsourcing of federal investigative responsibilities to this entity, it is unclear how this entity may invoke a "private

actor" status and refuse an order under Rule 16.[4]

Stated otherwise, and by analogy, under the logic applied in this case a federal agency could enter into a contract with a corporate entity from Florida to conduct independent investigations into drug trafficking. These private contractors could kick down doors or roust suspects in absolute violation of the Fourth Amendment, and then forward an e-mail stating essential information essential to search warrants with which agents could seek a search warrant without knowledge of the means by which the information was obtained, and thereby legitimately assert *Franks* protection through ignorance. If this entity derived this information from photographs, or video recordings or audiotapes and subsequently returned to Florida, then, despite its contractual arrangement with the federal government, this typically routine disclosure under Rule 16 would be characterized as no longer subject to disclosure as the property of a private corporate entity. This would essentially sanction potentially illegal investigations through a federal agency outsourcing investigative functions to private corporations. The result would be absurd, and ultimately no different than the result sought utilizing TLO.

As a separate matter, this Court is likely also aware of the strictures of contracting as applicable to software to be introduced to federal computer systems. It is doubtful at best that a federal agency, such as the Department of Homeland Security, introduced a private software to

---

[4]It is further submitted that a corporation run by a current law enforcement agent, Wiltse, offering a product with use limited to law enforcement entities, actively conducting law enforcement investigation with a product directly supporting searches conducted by federal agents is not a private entity. In effect, TLO, with regard to CPS, is the equivalent of a "shell corporation," a construct designed to shield another entity from liability, that serves to buffer the law enforcement agency contracting its services from public scrutiny utilizing a corporate structure. *See Walter E. Heller & Co. v. Video Innovations, Inc.*, 730 F.2d 50 (2d Cir.1984) (corporate veil pierced because jury found shell corporation was inadequately capitalized and lacked formalities of normal corporate existence).

its computer networks without precise details as to how the system functioned and the level of access and information it intended to introduce to the federal network.  Given the level of due diligence routinely exhibited by the federal government agencies in approving software to be introduced to their computer networks, it is unclear how the present federal agency would be incapable of compelling the production of the information requested, as it now claims to be the case, in the event of catastrophic interaction between CPS and the federal computer network. The arrangement suggests an uncanny degree of trust placed in software warranties by a private corporation.

Returning to the Order, while this Court focused on the phrase "possession, custody or control" with regard to the local federal agents, the relevant party to which this clause applies is 'government'.   This term is defined as "the defendant's adversary, the prosecution." *United States v. Trevino*, 556 F.2d 1265, 1271 (5th Cir. 1977).  Unlike the district judges or probation officers involved in the creation of the presentence reports addressed in *Trevino*, individuals who were not "in the business of introducing evidence in chief at trial," *id.*,

TLO is unquestionably an adversary, one easily called to introduce evidence in the Government's case-in-chief at trial in a case involving the receipt or distribution of the very child pornography that its system was designed to identify and monitor.  As such, by virtue of its involvement TLO is the government, not some private entity untethered to the government.  The shell game of who possesses what and where is thus overcome by applying the appropriate definition of 'government.'  TLO is not a random witness in possession of valuable information, in which the Government may claim the absence of a duty to perform investigative work for the defense.  Nor is it a neutral corporation, like a telephone service provider, with operations

6

substantially outside the realm of a criminal investigation. TLO is the investigator in this case. It is the government by virtue of its agency relationship authorized and bargained for by Homeland Security.

As declared by the Fifth Circuit, "Certainly the prosecutor would not be allowed to avoid disclosure of evidence by the simple expedient of leaving relevant evidence to repose in the hands of another agency while utilizing his access to it in preparing his case for trial; such evidence is plainly within his Rule 16 'control.'" *Id.* at 1272. In so declaring, the Fifth Circuit makes clear that the issue is not the physical location of the evidence, but rather whether the government is simply allowing evidence to reside elsewhere unless and until it requires the same. It is respectfully submitted that were a dismissal or acquittal at issue in the absence of the information now sought, then there would be little problem in the Government obtaining the same. Given the common goals of TLO and the Government, this unattainable information would materialize, and the stated legal impediments would become a small hurdle to overcome.

Finally, as stated in the beginning of this discussion, Mr. Ocasio has presented evidence of a warrantless search. Through the Wiltse affidavit, TLO, in executing its agreement with Homeland Security, conducted this search. Regardless of the technical discussion of Rule 16 above, this Court unquestionably may assert jurisdiction over TLO with a proper exercise of its inherent authority to resolve the Motion to Suppress now before it. TLO without question is the quintessential "private party [that] acted as an instrument or agent of the Government." It now cloaks itself in a corporate veil in an effort to avoid inquiry into its governmental operations in support of the very federal prosecution that summoned Mr. Ocasio to this Court. Given the nature of its involvement, it can neither claim surprise at this Court's order to explain itself, nor

can it claim a lack of jurisdiction given its national presence over the Internet and a product deliberately designed to utilize a media without geographical limitations.  In short, if TLO wishes to involve itself in federal investigations, then it will be considered a federal investigator and account for its conduct when occasion arises.  Now is such an occasion.

### III.  *United States v. Neale*, 5:12-CR-44

This Court found favor with the ruling in *Neale*.  Acknowledging that the Motion filed in *Neale* was a foundation for the present Motion to Suppress, *Neale* is both distinguishable and deficient in its decision.

First, *Neale* involves a single count alleging possession of child pornography (Indictment: Doc. No. 10), not receipt or distribution of child pornography, as in the present case.  These charges are distinct, with the charge of possession typically requiring a lesser quantum of proof than either receipt or distribution.  *See United States v. Miller*, 527 F.3d 54, 62 (3d Cir. 2008)(reasoning "a person who seeks out only adult pornography, but without his knowledge is sent a mix of adult and child pornography, could not be found guilty of knowingly receiving child pornography. . . . That same person, however, could be in violation of the possession provision of § 2252(a)(4)(B) if he or she decides to retain that material, thereby knowingly possessing it."(Citation and internal quotation marks omitted.)).  As a possession charge requires proof of the physical presence of the file, regardless of how the file may have arrived, claimed reliance on Rule 16, with its materiality requirement, would be somewhat dubious with respect to the count at issue.  In contrast, the Government has elected to charge both receipt and distribution, which directly places the manner of transport of the files at issue, as well as evidence used to prove the same.  The *Neale* court's reasoning is therefore questionable based on

8

the context of the case in which its ruling appeared.[5]  The same is not true in the present case.

Second, the court in *Neale* did not order a live demonstration, and expressly declined to decide whether it need do so.  In a footnote, that court declared

> The court issued an order on the record granting in part Defendant's motion with regard to the Peer Spectre software by allowing Defendant, through counsel, to attend the Government's demonstration of the Peer Spectre software and inquire of a Peer Spectre software expert regarding the manner in which the software functions during that demonstration. As the Government volunteered to provide the demonstration, the court did not and need decide whether Defendant was entitled to a demonstration in the absence of the Government's consent.

Entry Order at 1 n.1.  In short, counsel for the Government offered, and the court accepted that offer as sufficient.

This resolution is problematic in this case for several reasons.  First, Wiltse has made clear that the law enforcement display is essentially a dumb display, no different than the picture on a television, that offers processed information but provides no detail as to how the information was obtained.  The latter concern is central to the Motion to Suppress, the former is relevant only to the *Franks* issue.[6]  Second, while Wiltse makes clear in his affidavit that Peer Spectre is a component of CPS, it is unclear whether than component may be installed and operated separate from TLO, and therefore may operate at a local level under the control of a federal agency.  The court in *Neale* explains only that TLO holds the license, not that TLO

---

[5]The court determined materiality based on the agreement of the parties.  *See* Entry Order at 4 (Doc. No. 54).  One may assume that the Government potentially may have employed Peer Spectre information, as relevant to that case, to prove knowledge of the presence of the file through searches or file transfers.  In any event, that information would be less vital than would be proof of transfers in a receipt or distribution case.

[6]Counsel for the Government appears to have provided screen captures or printouts of this display specific to this case as exhibits to her Response to the Motion to Suppress.

operates Peer Spectre, as implemented in that case, as CPS is described in the present case. Finally, the core of this suppression issue is the process carried out by the software, not concerns that may be address through an exhibition of the pictures on a video screen offered through the corporate agent taking great pains to avoid presenting details of CPS operation.  A demonstration provides the demonstrator with complete control over the presentation, prevents substantive testing and effectively bars a substantive inquiry as to actual operation.  In effect, the corporate agent would declare "Trust me.  CPS is entirely legal," and the defense could question the representative no further.

By way of analogy, a demonstration of a computer system using what appears to be a display of information would be the equivalent of providing a photograph of a vehicle when the issue is how the vehicle handles on the road in operation or fails under certain environmental factors.  The issue in this case is not what the system displays, but rather why it displays what may appear on the monitor utilized.  Given the unseen nature of the Internet, it would be difficult to conceive of a scenario in which a display of information, absent specific details as to why a computer system elects to display such information and knowledge of the universe of data processed by such system resulting in such display, would be useful in resolving the Fourth Amendment issue now before this Court.

The present concern is technical, thus the information provided must be of a technical nature.  It is respectfully submitted that motions to suppress would be readily resolved if a simple assurance from a federal agent was sufficient.  The federal government has shown that it is willing to test the limits of the Fourth Amendment with new technology.  Cases involving GPS surveillance, thermal imaging and most recently 'Stingray' devices that imitate cell towers and

permit tracking of cellular telephones without warrants, *see* D. McCullough, FBI prepares to defend 'Stingray' cell phone tracking, cnet.com (available at http://news.cnet.com/8301-13578_3-57576690-38/fbi-prepares-to-defend-stingray-cell-phone-tracking/), require the intervention of federal courts when problems are squarely presented.  The repeated refrain of "trust me" in the face of these issues gives way to actual inquiry, followed by enlightenment to restrict measures that tread on Fourth Amendment rights.

      If CPS is simply a compilation of publicly available, non-intrusive programs, then the Government need not fear scrutiny of its investigative software and the present Motion to Suppress will quietly be withdrawn.  With appropriate protective orders, measures to which counsel will absolutely agree to further this review, there should be no concern as to investigations compromised.  However, if there are issues with CPS with regard to Fourth Amendment protections, and the facts of this case and zeal to which arguments in opposition to disclosure suggest there are, then counsel will assure this Court that these issues will be brought plainly and definitively to this Court's attention once and for all following review of the materials requested, specifically source code representing the objective evidence of actual operation rather than the words of a corporate representative whose primary aim would be to avoid embarrassing his company.  Absent this information, the present issue will end with the Government's assurance, and questions as to violations will continue until a judge calls TLO to the bar and demands an explanation.  It is respectfully submitted that justice requires that this case be resolved now, rather than some later date.

## IV.    CONCLUSION

In light of the foregoing, undersigned counsel requests that this Court reconsider its Order and grant the Motion to Compel in its entirety.

Respectfully submitted,

MAUREEN FRANCO
Federal Public Defender

/s/

MICHAEL GORMAN
Assistant Federal Public Defender
Western District of Texas
Federal Building
700 E. San Antonio, D-401
El Paso, Texas 79901
(915) 534-6525
*Attorney for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of May, 2013, I electronically filed the foregoing with the Clerk of Court using CM/ECF system which will send notification of such filing to the following:

J. Brandy Gardes
Special Assistant U. S. Attorney
700 E. San Antonio, Suite 200
El Paso, Texas 79901

/s/

_____
MICHAEL GORMAN
Assistant Federal Public Defender

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Case No. EP-11-CR-2728-KC-1** |
| | ) | |
| **ANGEL OCASIO** | ) | |

**ORDER GRANTING MOTION FOR RECONSIDERATION OF ORDER OF**
**APRIL 26, 2013**

On this day, this Court considered this Motion for Reconsideration of Order of April 26,

2013.  The Court, having considered the same, is of the opinion that said Motion should be

**GRANTED**.

It is therefore **ORDERED** that the Court **GRANTS** reconsideration of its April 26, 2013

Order.

It is further **ORDERED** that remedy sought through the Motion to Compel Disclosure is

hereby **GRANTED**.

**SO ORDERED**.

**SIGNED AND ENTERED** this ____ day of _____, 2013.


_____
KATHLEEN CARDONE
UNITED STATES DISTRICT COURT JUDGE