IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS

EL PASO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| v. | § | Cause No.: EP-11-CR-2728-KC |
| | § | |
| ANGEL OCASIO, | § | |
| | § | |

GOVERNMENT'S RESPONSE TO DEFENDANT'S
MOTION FOR RECONSIDERATION OF ORDER OF APRIL 26, 2013

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW the United States of America, by and through the United States Attorney for the Western District of Texas and the undersigned Assistant United States Attorney, and submits this Response to Defendant's Motion For Reconsideration of Order of April 26, 2013 [ECF Doc. 122], and would respectfully show unto this Honorable Court the following:

In his Motion for Reconsideration, defendant expresses his disagreement with the Court's refusal to order the turnover of various documents and software programs which, clearly, are not within the Government's control.  As previously briefed, TLO was acting as a private corporate entity, and not as a government agent, when it used its self-developed software to scan public peer-to-peer systems for hash values of known child pornography and unexpectedly hit on defendant's peer-to-peer account.

Defendant offers unsubstantiated arguments and hypotheticals which do not support his argument.  Rather, the affidavit provided by TLO lent sufficient evidentiary support for the district court's decision in this case.

Defendant's first premise is "[f]or the purpose of the Rule 16 analysis, it is respectfully submitted that a third party contracted to conduct federal investigations by computer which, by statute, are limited to federal law enforcement agencies, is a *de facto* government agent subject to the full range of Rule 16 disclosure mandates." [Motion, ECF Doc. 126, pp. 3-4]. Defendant's statement is not only factually incorrect, he offers no legal support for his position.

The question of whether a private entity such as TLO serves as a mere conduit for the Government in performing a search and, thus, becomes a government agent "necessarily turns on the degree of the Government's participation in the private party's activities." *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 614 (1989). There must be some evidence of Government participation in or affirmative encouragement of the private search before a court should find a *de facto* agency relationship. Passive acceptance by the Government is not enough. *United States v. Jarrett*, 338 F.3d 339, 346 (4th Cir. 2003). The defendant shoulders the burden of establishing the existence of an agency relationship. *See, United States v. Ellyson*, 326 F.3d 511, 527 (4th Cir. 2003); *United States v. Jarrett*, 338 F.3d at 344; *United States v. Shaid*, 117 F.3d 322, 325 (7th Cir. 1997). Defendant has failed to meet that burden.

One of the leading cases in governmental agency relationships is *Skinner v. Railway Labor Executives' Ass'n, supra*, 489 U.S. 602 (1989). In *Skinner*, the Court considered whether the regulatory scheme imposed by the Federal Railroad Administration ("FRA") for mandatory and permissive drug testing by private railroads implicated the Fourth Amendment. Subpart C of the regulations required railroads to gather blood and urine samples from employees involved in serious accidents resulting in fatalities, injuries or significant property damage. *See Skinner*, 489 U.S. at 609, 109 S.Ct. 1402. Because the regulations in subpart C mandated the

means, methods and procedures for testing, the Court concluded that "[a] railroad that complies with the provisions of Subpart C of the regulations does so by compulsion of sovereign authority, and the lawfulness of its acts is controlled by the Fourth Amendment." *Id.* at 614.

A more difficult question for the *Skinner* Court, however, was whether the Fourth Amendment was implicated when a private railroad tested its employees under certain non-mandatory regulations. Subpart D of the FRA's regulatory scheme was permissive, authorizing breath or urine tests when a supervisor had a "reasonable suspicion" a worker's actions "contributed to the occurrence or severity of [an] accident" or that an employee was "under the influence of alcohol." *Id.* at 611. Although permissive, Subpart D nevertheless dictated how the blood and urine tests were to be conducted: "As in the case of samples procured under Subpart C, the regulations set forth procedures for the collection of samples, and require[d] that samples be analyzed by a method that is reliable within known tolerances." *Id.* at 611–12 (internal quotation marks omitted). Moreover, the regulations "confer[red] upon the FRA the right to receive certain biological samples and test results procured by railroads pursuant to Subpart D." *Id.* at 615.

The Court concluded, despite the non-mandatory nature of Subpart D, a private railroad acted as a government agent when conducting breath or urine tests under that section. The Court explained the Government's intent to actively participate and exert a measure of control over any search under Subpart D was apparent from the fact the regulations preempted state law and "supersede[d] any provision of a collective bargaining agreement, or arbitration award construing such an agreement." *Id.* (internal quotation marks omitted). Additionally, the Court noted a private railroad was not permitted to "divest itself of, or otherwise compromise by

contract, the authority conferred by Subpart D," and its employees were not "free to decline ... to submit to breath or urine tests under the conditions set forth in Subpart D." *Id.*  Based on those provisions, the *Skinner* Court concluded any testing under Subpart D was not "primarily the result of private initiative" and thus triggered application of the Fourth Amendment.  *Id.*  Such is not the case herein.

As indicated in the William Wiltse Affidavit (attached as Exhibit A to the Government's Response to Defendant's Motion to Compel [ECF Doc. 118]), TLO is a private entity based in Florida.  TLO developed a suite of scanning tools - known as the Child Protection System ("CPS") - of its own volition, without any suggestion or assistance from the federal government.  It is not TLO's only product, but rather only one of many custom, scalable investigative and risk management tools for due diligence, threat assessment, identity authentication, fraud prevention and detection, legislative compliance, and debt recovery available to the public and private sectors.  *See,* www.TLO.com.  In other words, TLO made an independent business decision to develop and use the CPS technology.  Moreover, no government agency has oversight function over TLO and its use of CPS.

Nevertheless, defendant does not concede that TLO is a private party. He argues the mere licensing relationship between TLO and federal law enforcement is sufficient to establish TLO was acting as a government agent when it randomly searched defendant's computer system for hash values associated with child pornography. This relationship, he argues, transforms TLO into a government agent.

The path chosen by defendant has been travelled in other contexts and the same premise rejected.  For instance, in *United States v. Cameron*, 699 F.2d 621 (1st Cir. 2012), *cert.*

4

*denied* __ U.S. __ 2013 WL 0991267 (Ap. 15, 2013), the Court considered whether the Internet Service Provider (ISP) Yahoo! was acting as a government agent during the warrantless search of defendant's email traffic.[1] In *Cameron*, pursuant to the mandatory reporting requirement in Title 18, United States Code, section 2258A,[2] Yahoo! reported to the CyberTip Line at the National Center for Missing and Exploited Children (NCMEC) it had detected the transmission of child pornography by certain subscribers, including defendant Cameron. This tip led to a search warrant on defendant's computer equipment and email address. Cameron argued Yahoo! was a private party acting on behalf of the government and was subject to the same constitutional restrictions which apply to a law enforcement officer. The *Cameron* Court disagreed, finding Yahoo! was not acting as a Government agent since (1) the Government had no role in

---

[1] Although decided in the context of an alleged warrantless search, the Government respectfully submits the analysis of this and other like cases is the same as that used in a determination of whether a private entity is a "government agent" for purposes of disclosure under Rule 16.

[2] Title 18, United States Code, section 2258A, provides in pertinent part:
  **(a) Duty to report.**--
   **(1) In general.**--Whoever, while engaged in providing an electronic communication service or a remote computing service to the public through a facility or means of interstate or foreign commerce, obtains actual knowledge of any facts or circumstances described in paragraph (2) shall, as soon as reasonably possible--

   **(A)** provide to the CyberTipline of the National Center for Missing and Exploited Children, or any successor to the CyberTipline operated by such center, the mailing address, telephone number, facsimile number, electronic mail address of, and individual point of contact for, such electronic communication service provider or remote computing service provider; and

   **(B)** make a report of such facts or circumstances to the CyberTipline, or any successor to the CyberTipline operated by such center.

   **(2) Facts or circumstances.**--The facts or circumstances described in this paragraph are any facts or circumstances from which there is an apparent violation of—

   **(A)** section 2251, 2251A, 2252, 2252A, 2252B, or 2260 that involves child pornography; or

   **(B)** section 1466A.

5

instigating, coercing or participating in the search; (2) the Government did not exercise any control over Yahoo! or over the search; and (3) while combating child pornography is a government interest, it did not mean Yahoo! could not voluntarily choose to have the same interest. *Id.* at 637.  The same argument raised by the defendant in *Cameron* has been rejected by every other federal tribunal across the land in which it has been litigated.  *See, e.g., United States v. Richardson*, 607 F.3d 357 (4th Cir. 2010); *United States v. Green*, 857 F. Supp. 2d 1015 (S.D. Cal. 2012).

In *United States v. Richardson*, 607 F.3d 360, 364-68 (4th Cir. 2010), like *Cameron*, defendant charged with federal child pornography offenses discovered when AOL searched its computer system and found he had used his ISP account to transmit child pornography. *Id*. at 360-361.  He also moved to suppress all evidence derived thereafter, claiming "de facto agency relationship" existed between the ISP and the Government. *Id.* at 365.  The Fourth Circuit found Richardson's claims without merit – this despite the fact that federal law encourages ISPs to search their systems for illicit images.  First, the the federal regulatory scheme only required ISPs to inform NCMEC if it learned of a child pornography violation, but does not require them to go looking for child pornographers. *Id*. at 366.  The law does not even instruct ISPs how to do so, in the event they independently "decided to ferret out subscribers using [their systems] to transmit illegal digital images." *Id*.  Additionally, federal law specifically stated it was not to be interpreted as requiring any ISP to monitor a customer's activities online. *Id*. at 366-7.  In other words, federal law did not compel AOL's search nor tell AOL how to do so.  Second, federal penalty provisions imposed on ISPs who failed to report child pornography of which they became aware did not transform AOL into a government agent.  The penalty provisions could

actually compel ISPs to "take steps to avoid discovering reportable information" to keep from triggering the requirement, rather than inspiring them to go looking for it.  *Id*. at 367.  Finally, there was no evidence the government or Congress intended to "deputize" internet service providers.  Federal law "clears the way for ISPs to *report* violations of the child pornography law, not investigate them."  *Id*. at 367.  The *Richardson* Court found no conduct by AOL nor the federal government, nor any connection between them, that transformed the ISP into a government agent.  The same is true in this case.

Application of the factors looked at by these courts to the facts at hand produces the same result.   Herein, the Government had no role in instigating, coercing or participating in the search; the Government had no control over the manner or means of the search, or even in identifying the target; and, the fact that TLO, like the overwhelming majority of society, would prefer to prevent child pornography from being disseminated on the internet does not transform it into a law enforcement agency.

Simply put, the government had no participation in TLO's private search either before or during the search of defendant's computer.  The government did not ask TLO to conduct either a general search of the peer-to-peer network or a specific search of defendant's account.  In fact, there was no identified target of the search; the search was a dragnet search of files passing through a public peer-to-peer system.   The government did not require TLO - or any other entity - to search for child pornography.  The government did not assist with the search and had no prior knowledge of the specific search of defendant's computer.  TLO conducted the search with technology it developed to monitor these systems to combat child pornography.  The federal government did not direct TLO to develop or use its proprietary search program.  In

sum, TLO was not and is not a "de facto" government agency.

## CONCLUSION

WHEREFORE, the United States respectfully requests this Court deny defendant's Motion for Reconsideration and uphold the Court's Order finding the Government does not have possession, custody or control of the information held by TLO, a private corporation and thus not discoverable under Fed. R. Crim. P. 16.

Respectfully submitted,

ROBERT PITMAN
UNITED STATES ATTORNEY

By:  /s/
J. BRANDY GARDES
Assistant United States Attorney
CA Bar No. 144770
700 E. San Antonio, Ste. 200
El Paso, Texas  79901
(915) 534-6884

**CERTIFICATE OF SERVICE**

     I hereby certify that on the 7th day of May, 2013, a true and correct copy of the foregoing instrument was electronically filed with the Clerk of the Court using the CM/ECF System which will transmit notification of such filing to the following CM/ECF participant:

| | |
|---|---|
| Michael Gorman, AFPD | Attorneys for Defendant |
| Shane McMahon, AFPD | |
| Federal Public Defenders Office | |
| 700 E. San Antonio, 4th Floor | |
| El Paso, Texas 79901 | |

                                            /s/
                                 J. BRANDY GARDES

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS

EL PASO DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** § § | |
| **v.** § § | Cause No.: EP-11-CR-2728-KC |
| **ANGEL OCASIO,** § § | |

**ORDER**

On this day came to be considered the Defendant's Motion for Reconsideration of Order of April 26, 2013 [ECF Doc. 126], and the Government's Response thereto [ECF Doc. 128]. After due consideration, the Court is of the opinion the motion should be **DENIED.**

Accordingly, it is hereby ORDERED Defendant's Motion for Recondiseration of Order of April 26, 2013 is hereby **DENIED**.

**SIGNED and ENTERED** this ___ day of May, 2013.

_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE