UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. EP-11-CR-2728-KC-1 |
| | ) | |
| ANGEL OCASIO | ) | |

RESPONSE TO GOVERNMENT'S MOTION TO QUASH SUBPOENAS
ISSUED PURSUANT TO FRCrP 17

Defendant ANGEL OCASIO ("Mr. Ocasio"), by his attorney, respectfully submits this

Response to Government's Motion to Quash Subpoenas Issued Pursuant to Federal Rule of

Criminal Procedure 17 (hereafter "Motion"), and would respectfully show the following:

I.      MOTION TO QUASH SHOULD BE DENIED AS UNTIMELY

At the outset, and as noted in the Notice of Compliance (doc. No. 135), Federal Rule of

Criminal Procedure 17(c)(2) authorizes motions to quote when made 'promptly'.  *See* FED. R.

CRIM. P. 17(c)(2) ("On motion made promptly, the court may quash or modify the subpoena if

compliance would be unreasonable or oppressive.") .  The subpoenas provided as Exhibits A and

B reflect that agents of TLO, LLC were served on May 3, 2013 with a demand for production of

documents and computer files.[1]  Those subpoenas provided specific contact information that

TLO, LLC could utilize, to include an e-mail address for undersigned counsel permitting reply

---

[1]The Government characterizes the request as seeking "voluminous records and data." Mot. at 2.  As the Government has disclaimed knowledge of the holdings of TLO. LLC, and William Wiltse has not specified what, precisely would be produced, this would appear to represent an assumption and no more.  It suffices to say that if CPS represents no more than a minor modification to publicly available software, the production requested may well entail sparse disclosure.   If TLO wishes to characterize the request as burdensome, then it, and only it in light of proceedings in this case and the position assumed by the Government with regard to CPS, would be in a position to make this assertion as only it would appear to be knowledge with regard to the documentation and computer files involved.

without office hour limitations.

Neither individual subpoenaed ever raised any concerns to the defense or this Court as to the ability to respond with the requested information, the form of the request or the validity of the request itself, instead electing to remain silent in the face of these requests.  The agent for service of process claims to be an attorney, who presumably would be acquainted with procedures regarding subpoenas.  William Wiltse, drafted and signed an affidavit dated April 11, 2013, which was attached as Exhibit A to the Government's Response to the Motion to Compel (Doc. No. 118).  He attests to substantial experience as a law enforcement officer, Wiltse Aff. ¶ 1, and claims director status with TLO, LLC, Para. 2, but simply ignored the demand for production set forth in the subpoena.  As Wiltse claims to be the developer of CPS, it is difficult to fathom how an individual with this lofty status would not have access to the work product associated with his project.[2]

In the end, it is the Government, a party similarly offering no response to the subpoena, which now files the present Motion to Quash.  Having elected to simply ignore the subpoenas for the past three weeks with trial imminent, neither the Government nor TLO, LLC should be permitted to protest either the form or substance of the demand for production.  *See United States v. Partin*, 552 F.2d 621, 630 n.9 (5th Cir. 1977)("The proper method . . . to contest the . . .

---

[2]William Wiltse has offered himself as a participant in these proceedings and identified himself as the developer of CPS.  The Government argues he is not the custodian of records, and thus was not the proper person to whom to direct the request.  Mot. at 8.  As this Court is well aware, the identity of TLO, LLC was unknown prior to the Government's Response to the Motion to Compel.  Now, apparently, despite his self-proclaimed title of developer, Mr. Wiltse apparently lacks access to the specific documents demanded with regard to the specific software developed and would be incapable of producing the requested documents.  It suffices to say that if internal protocol demands that another individual produce the documents requested, Mr. Wiltse need only produce the details to the defense in order to bring this issue to resolution

subpoena . . . would have been to file a motion to quash, not to ignore it."). Under no circumstance may this Motion to Quash be characterized as "made promptly." The Motion to Quash may therefore be denied without addressing the substantive issues raised therein.

## II.       STANDING TO FILE MOTION TO QUASH

The Government now elects, at this Court's invitation, to champion the cause of TLO, LLC, the author and developer of CPS, for which it has taken affirmative steps in the Response to the Motion to Compel to disclaim knowledge and control over this apparently proprietary product through reliance on the Wiltse affidavit. If the item sought is not within its "possession, custody and control," and it is unable to procure the item sought, then it is unclear how it has standing as attorney in fact with regard to this independent entity to offer opposition to the subpoenas. A party generally lacks standing to challenge a subpoena issued to a non-party absent a claim of privilege or a proprietary interest in the subpoenaed matter. *See United States v. Reyes*, 162 F.R.D. 468, 470 (S.D.N.Y.1995) (citing *Langford v. Chrysler Motors Corp.*, 513 F.2d 1121 (2d Cir.1975)). Having apparently presented its case that its agents know only what TLO has offered to explain regarding CPS, and that its agents lack any substantive knowledge of the workings of CPS, it is unclear how the Government may now appropriately return to the fray and fight to protect information of which it purportedly has no real understanding. The only party that would appear to have an appropriate understanding of CPS and the TLO, LLC corporate structure for purposes of filing a Motion to Quash would appear to be TLO, LLC. However, it remains silent to date on the subject.

## III.      TECHNICAL ISSUES WITH THE SUBPOENA

The Government cites a number of issues with the form of the subpoena, specifically (1)

3

manner of service, Mot. at 7, (2) lack of specificity as to date of compliance, and (3) the designated place of production, .   Each will be addressed in turn.

With regard to improper service, the Government claims the form of service was defective.  The Government indicates it was improper to mail the subpoenas without the witnesses's consent.  The Government does not cite a legal basis for this interpretation, and it is not apparent why such a requirement might be imposed on service.

With regard to the Government's claim as to the form of the demand of the subpoenas, the subpoenas utilized the well-known term 'instanter'.  Given the pendency of trial and the necessity of resolving the present Motion to Suppress, that term was employed.  This term is not ambiguous, specifically meaning "[i]nstantly; at once."  BLACK'S LAW DICTIONARY (9th ed. 2009).   Undersigned counsel anticipated that this would trigger a response of production within a reasonable time by the individuals to whom the subpoenas were directed.  As Mr. Wiltse is a participant in proceedings on the Motion to Suppress by virtue of his affidavit in which he specifically identifies the federal agents involved in this case by name, *see* Wiltse Aff. ¶ 10, any claimed ambiguity as to what the demand for production specifically pertained to would be disingenuous at best.  Undersigned counsel specifically detailed the form of delivery, whether traditional mail or e-mail attachment.  The request was not ambiguous.

Moreover, with regard to delivery of documents and computer files to defense counsel rather than to the court, it is significant that the Government cites *United States v. Hedge*, 462 F.2d 220 (5th Cir. 1972), as authority.  In a case involving a Government subpoena commanding that witnesses appear in person at a federal agency rather than in the court prior to trial, the court held "While we agree with the appellants' interpretation of the Rule, . . ., we do not agree that

reversal is required, for we cannot discern any prejudice arising from this irregularity in the case at bar." *Id.* at 223. The Government does not identify how this action may have prejudiced it, and likely cannot do so as undersigned counsel could simply permit inspection or review by the Government or forward copies of the same to the Government.

Finally, it is worth adding that the law is unsettled as to whether a subpoena duces tecum requires advance approval by a federal court, thereby implying advance screening of the subpoena requirements, or whether the motion to quash procedure permits sufficient review by courts. See *United States v. Jenkins*, 895 F.Supp. 1389, 1395 (D. HI 1995)(" However, where the application seeks pretrial production of documents, the scene changes, and the application of the provision for ex parte proceedings becomes unclear."). It suffices to say that, in the absence of established procedures to address this eventuality, the appropriate mechanism to address any claimed deficiencies specific to third party subpoenas is the timely motion to quash. Now three weeks later, and given the complete lack of involvement by TLO, LLC with regard to this issue despite its apparent zeal to join the Government in opposing the requests directed to it, it should not be rewarded for eleventh hour arguments directed to the procedures employed.

## IV.    *NIXON* STANDARD

The Government offers the standard applicable to Government subpoenas set forth in *United States v. Nixon*, 418 U.S. 683, 698 (1974). The applicability of this standard to defense subpoenas remains unclear. *See United States v. Tucker*, 249 F.R.D. 58, 66 (S.D. N.Y. 2008). The court in Tucker conducted a comprehensive analysis of Rule 17 in providing the following:

> Although I conclude that the standard annunciated in *Nixon* should not apply in the instant situation, the less-stringent standard I apply requires, as a threshold matter, the element of materiality. Under this standard, Rule 17(c) subpoenas are not to be used

as broad discovery devices, but must be reasonably targeted to ensure the production of material evidence.

*Id.*  It is respectfully submitted that a materiality standard reflects the more appropriate approach, and should govern this Court's analysis in this case.  Under that standard, there can be little question that information specific to the operation of a computer program designed to conduct a search of computers would be material to resolution of a motion to suppress directed to an invasive search conducted by the same computer program.

However, the outcome is no different under the Nixon standard.  "A subpoena for documents may be quashed if their production would be 'unreasonable or oppressive,' but not otherwise."  *Nixon*, 418 U.S. at 698.

> [I]n order to require production prior to trial, the moving party must show: (1) that the documents are evidentiary and relevent; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'

*Id.* At 699.  In this case, this Court need not hesitate in ruling that the information and documents sought through the subpoenas are appropriate.  The Motion to Suppress turns on the operation of CPS, and such was the reason this Court entertained the Motion to Compel following the most recent hearing.  Additionally, trial may very well involve proof of distribution as generated by CPS.  All evidence sought is within the exclusive custody of TLO, LLC, as conceded by the Government in its Response to the Motion to Compel.  There is simply no alternative by which to obtain this information.

With regard to the Government's claim that the request materials constitute a "fishing

expedition," Mot. at 5, this Court addressed this concern during the hearing on the Motion to Suppress, and need not revisit the same. There are two declared needs for this information, the first and foremost being as necessary to address the issues raised in the Motion to Suppress. The operation of the CPS software is directly at issue with regard to the Motion to Suppress. This Court may unquestionably order production of the details consistent with Rule 17. The focus of this subpoena is the Motion to Suppress, which, as this Court has acknowledged in the hearing on the same, proceeds with counsel for the Government claiming any expert lacks specific knowledge of CPS and thereafter attacks empirical observations while contesting efforts to obtain the best and conclusive evidence of the system at issue.

With regard to the Government's repeated references to relevancy turning on the substance of the Motion to Compel, Mot. at 5-8, it suffices to say the defense offered this information with regard to this Court's authority to compel production and not specifically to the *Nixon* standard, which governs subpoenas. When the specific issue is defined as the operation of investigative software, software designed to monitor peer-to-peer network transfers of computer files, and the information sought is the documents and computer files implementing and describing such operation, there is no relevancy concern. The Government's objection is akin to claiming the that a review of the internal components of a television is irrelevant in a product liability case arising after the television explodes inexplicably. This case, and specifically the Motion to Suppress, involves CPS, and the operation of that system is unquestionably placed at issue in this case by virtue of the Government's identification of the same as investigative software and facts suggesting improper operation in the conduct of a computer search in this case. Any improper operation would further be material and relevant to undercutting the Government's receipt and

distribution charges relying on the same.

## V.    PRIVILEGE

The Government offers a final argument with regard to privilege of the information sought. The issue of copyright and trade secret was addressed in the Reply to the Motion to Compel. To avoid the necessity of repeated references to that filing, the discussion will be repeated herein.

A copyright, by federal law through the Copyright Act of 1976, affords the original author or assignee certain rights, to include (1) reproduction of the copyrighted work in copies; (2) preparation of derivative works based upon the copyrighted work; (3) distribution of copies or phonorecords of the copyrighted work to the public by sale, or other transfer of ownership; or by rental, lease, or lending; (4) performance of the copyrighted work publicly, for example with a dramatic work; and (5) with sound recordings, the right to perform the copyrighted work publicly through digital transmission. *See* 17 U.S.C. § 106. These rights exist for one who (1) authors an original work and (2) fixes such work in any tangible medium of expression, now known or later developed, from which it can be perceived, reproduced, or otherwise communicated. *Id.* § 102.

"[T]he justification of the copyright law is the protection of the commercial interest of the artist/author. It is not to coddle artistic vanity or to protect secrecy, but to stimulate creation by protecting its rewards." *New Era Publications International, ApS v. Henry Holt & Co.*, 695 F. Supp. 1493, 1526 (S.D.N.Y. 1988). "The [author or assignee's] interest is, principally, a property interest in the copyrighted material." *Salinger v. Colting*, 607 F.3d 68, 81 (2d Cir. 2010) (citing *Wheaton v. Peters*, 33 U.S. 591, 661 (1834)). In the context of this case, the use of open source peer-to-peer sharing software would not be subject to copyright protection as any use of this

publicly available computer code would not be considered an original work.  Copyright

protection, to the extent it exists at all, would exist in original computer code added to the

publicly available code, and would be limited to that original code.  Mr. Wiltse's reference to CPS

as "copyrighted computer applications," Wiltse Aff. ¶ 8, is therefore curious as such would

pertain to restrictions on licensing and copying, but not to orders of federal courts.  In short, the

copyright issue is not an issue in this case.

In contrast to federal copyright law, State trade secret laws[3] protect information that: (1)

has an independent economic value as a result of its not being generally known and not readily

ascertainable by proper means; and (2) is subject to reasonable efforts to maintain its secrecy.

UNIF. TRADE SECRETS ACT § 1 (amended 1985), 14 U.L.A. 437 (1990); *see also Tewari De-Ox

Systems, Inc. v. Mountain States/Rosen, L.L.C.*, 637 F.3d 604 (5th Cir. 2011)(applying Texas law

in which trade secret status turns on (1) the extent to which the information is known outside of

the business; (2) the extent to which it is known by employees and others involved in the business;

(3) the extent of measures taken to guard the secrecy of the information; (4) the value of the

information to the business and to its competitors; (5) the amount of effort or money expended in

developing the information; and (6) the ease or difficulty with which the information could be

properly acquired or duplicated by others). Under trade secret law, computer code may qualify for

trade secret protection. *See, e.g., Trandes Corp. v. Guy F. Atkinson Co.*, 996 F.2d 655, 663 (4th

Cir. 1993).

Trade secret protection, which serves to deter improper disclosure of secret information,

expires when the object of the protection is no longer a secret.  *See, e.g., JustMed, Inc. v. Byce*,

---

[3]It is assumed that any reference to 'proprietary' is a reference to "trade secret."

600 F.3d 1118, 1128-30 (9th Cir. 2010).  It is for this reason that courts routinely employ

protective orders that prohibit the use or disclosure of information specific to trade secrets outside

the bounds of the litigation.  UNIF. TRADE SECRETS ACT § 5 (providing "a court shall preserve the

secrecy of an alleged trade secret by reasonable means, which may include granting protective

orders in connection with discovery proceedings, holding in-camera hearings, sealing the records

of the action, and ordering any person involved in the litigation not to disclose an alleged trade

secret without prior court approval").   As was the case with the copyright illustration above,

publicly available source code is, by definition, not a secret, thus may not be characterized as a

protected trade secret. It is only when that source code is utilized in a unique and economically

valuable manner that it may become a trade secret.   It bears repeating that any concern identified

by Mr. Wiltse's affidavit is readily addressed by an appropriate protective order prohibiting

disclosure.  This practice is regularly employed in civil trade secret cases, and will be no less

effective in this case.

       Finally, law enforcement officers and agencies may assert a law enforcement privilege or

investigatory privilege "to prevent disclosure of law enforcement techniques and procedures, to

preserve the confidentiality of sources, to protect witness and law enforcement personnel, to

safeguard the privacy of individuals involved in an investigation, and otherwise to prevent

interference with an investigation." *Commonwealth Puerto Rico v. United States*, 490 F.3d 50,

64 (1st Cir. 2007). This privilege is qualified, and overcome by a demonstration of need. "When

the information sought is both relevant and essential to the presentation of the case on the merits

and the need for disclosure outweighs the need for secrecy, the privilege is overcome." *Miller v.*

*Mehltretter*, 478 F. Supp. 2d 415, 424 (W.D.N.Y. 2007). In determining whether disclosure is

appropriate despite assertion of this privilege, the Fifth Circuit directs trial courts to consider the

following factors:

> (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any interdepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; (10) the importance of the information sought to the plaintiff's case.

*In re Dept. of Homeland Sec.*, 459 F.3d 565, 570 (5th Cir. 2006).

The Government argues that "Disclosure of the records and data requested in Defendant's

subpoena would significantly degrade the usefulness of CPS as a worldwide investigative tool, as

well as compromising numerous ongoing criminal investigations."   Mot. at 9.  Given the

availability of protective orders designed to prevent this eventuality, it is unclear how this concern

should trouble this Court in any way.  Paragraphs 12 and 13 of Mr. Wiltse's Affidavit describe the

specific information encapsulating his concerns and the basis for the Government's asserted

privilege: (1) a unique Internet address embedded in the software and (2) the means by which

network connections are established between the TLO  server and remote law enforcement

systems.[4]  These concerns are fairly simple, and readily addressed by a protective order.

---

[4]With all due regard to Mr. Wiltse's concerns regarding the handling of this information by "untrained and unlicensed, non-law enforcement users," Wiltse Aff. ¶ 12, unless and until Mr. Wiltse establishes his own level of computer programming proficiency, it suffices to say computer code does not transmit information in any form until the code is compiled and executed.  It is the raw code for CPS that is of primary interest, and the review of such code will not involve a broadcast of information in any form.

In sum, it is the Government's burden to claim privilege.  It has not done so.  If TLO has greater detail that may be offered in support of its privilege, then it is incumbent upon it to appear and articulate the same.  Barring that eventuality, the claim of privilege in response to the request for production is without merit.

## VI.    CONCLUSION

In the hearing on the Motion to Suppress, this Court correctly posed its question as to why the CPS computer program could not be reviewed in order to resolve lingering doubts as to its operation.  The defense, armed with information regarding specific anomalies that raised questions as to whether a computer program, CPS, was conducting intrusive and warrantless searches of non-public information, moved to compel production of details specific to CPS.  The Government responded by claiming ignorance and a lack of control over CPS.  After inviting resort to a third party subpoena, Mot. Compel Resp. at 4 n.1 ("Federal Rule of Criminal Procedure 17 sets forth the method by which defendant could attempt to acquire the information he seeks which is in the possession of a third party."), the Government now returns to oppose the same.  Having denied that TLO may be considered the Government, it appears TLO is once again in the fold.

If the issue of technical non-compliance troubles this Court, such can be easily resolved by amendment of the subpoena or subpoenas.  While the Government's concern in footnote 2, specifically "The company who owns the system wishes to file a Motion to Quash the subpoena but must first locate and engage local counsel as the company corporate counsel is not admitted to practice in the Western District of Texas," may have superficial appeal, TLO has an attorney designated for service.  Corporations routinely retain local counsel to address short-fused

temporary restraining orders, thus the desire of TLO to appear and respond must be read in the context of the 3 weeks that have passed since receipt of the original subpoenas.  The issues set forth in the Motion to Suppress are important, technical in nature, and likely to repeat in the wealth of peer-to-peer searches and seizures in this District if not addressed here and now.

Ultimately, the defense will provide any document in any form to bring this discovery issue to resolution to this Court's satisfaction.  The defense needs this information prior to any hearing or trial, as it would be impossible to review thousands of lines of computer code at the time of the hearing or trial.  The defense will abide by protective orders installed to prevent disclosure of protected or sensitive information.  Undersigned counsel has long held a security clearance in the military, and has conducted operations that required such a clearance without issue.  He understands well the concept of non-disclosure, and has neither wish nor intention to compromise ongoing criminal investigations, unless it is ultimately determined that those investigations are conducted in violation of the law.  Furthermore, undersigned counsel has the technical background to review the materials requested without additional distribution and thereby ascertain whether there is cause for additional expert review of the same.  If CPS is the legitimate program Mr. Wiltse claims it to be, then the Government will do its counterparts in other Districts a service as undersigned counsel will announce his findings to defense offices nationwide, without disclosing specific proprietary information, and likely put an end to concerns directed to intrusive searches specific to CPS.

In the end, the fact the Government lacks a true understanding of this investigative software after explaining CPS operation in search warrant affidavits is troubling.  It is further troubling that the Government turns to third-party denials when asked to account for anomalies in

13

criminal cases, claiming a complete lack of control over CPS.  Now, the Government returns to press its interests for this third party by claiming privileges specific to law enforcement.  This sequence of events gives the appearance of a discovery shell game, only serves to exacerbate concerns directed to the operation of CPS.  It is unclear why a program that the search warrant affidavit claims to be a slight novation over publicly available software is the object of this much resistance.[5]  These questions can be resolved, once and for all, by production of the source and object code.[6]

---

[5]Undersigned counsel does not profess to status as a master computer programmer, but it bears noting that the aspects of CPS described in the search warrant as a novation over publicly availably computer code on which it is based do not suggest programming features that would be characterized, in any way, as groundbreaking or difficult to implement.  If the affidavit truly defines CPS, then it is unclear why, other than the Internet address mentioned, this program's design would be considered by TLO to be the closely held secret it now appears to be.

[6]Undersigned counsel does not seek access to the corporate database, which contains the archive of information accessed by CPS, but rather the functions (components of programs that act on data), objects (structure of data, e.g., a rectangular 'object' would be defined by a length and width, while a box would be defined by variable representing length, width and depth) that comprise typical programs.  The Motion to Suppress focuses on the manner information is obtained, not on how TLO  stores or processes the same information.  These represent very different concepts.

For the foregoing reasons, it is respectfully submitted that the Government's Motion should be denied.

Very truly yours,

MAUREEN FRANCO
Federal Public Defender

/s/

MICHAEL GORMAN
Assistant Federal Public Defender
Western District of Texas
Federal Building
700 E. San Antonio, D-401
El Paso, Texas 79901
(915) 534-6525

*Attorney for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on the 25th day of May, 2013, I electronically filed the foregoing with the Clerk of Court using CM/ECF system which will send notification of such filing to the following:

J. Brandy Gardes
Assistant U. S. Attorney
700 E. San Antonio, Suite 200
El Paso, Texas 79901


                                    /s/
                        _____
                        Michael Gorman
                        Attorney for Defendant