IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| v. | § | EP-11-CR-2728-KC |
| | § | |
| ANGEL OCASIO. | § | |

**ORDER**

On this day the Court considered both Defendant Angel Ocasio's Motion to Compel Production of Materials and Information Demanded by Subpoena ("Motion to Compel"), ECF No. 140, and TLO, LLC's Motion to Quash Subpoena Issued Pursuant to Federal Rule of Criminal Procedure 17 ("Motion to Quash"), ECF No. 141. For reasons set forth below, the Motion to Compel is **GRANTED** and the Motion to Quash is **DENIED**.

**I.   BACKGROUND**

On May 3, 2013, Angel Ocasio served two subpoenas duces tecum on agents of TLO, LLC. *See* Mot. to Quash Subpoenas Issued Pursuant to FRCrP 17 Exs. 1-2, ECF Nos. 137-1, 137-2. These subpoenas, issued pursuant to Federal Rule of Criminal Procedure 17, demand that agents of TLO, LLC—a third-party software company—produce the computer source code and documentation relating to a piece of software created by TLO and identified as the Child Protection System or CPS. *See id*. Ocasio seeks the source code and documentation to support his argument, made in a motion to suppress, that the government's use of the CPS software violated the Fourth Amendment of the United States Constitution. *See* Def.'s Mot. to Suppress and Supporting Mem. ("Motion to Suppress") 9-10, ECF No. 85.

On May 21, 2013, the government learned that these two subpoenas had been served. Government's Unopposed Mot. to Enlarge Time in which to Respond 1, ECF No. 133. Then, on

May 23, 2013, the government filed a motion to quash these subpoenas on both procedural and substantive grounds.  *See* Mot. to Quash Subpoenas Issued Pursuant to FRCrP 17 2-11, ECF No. 137.  In its May 28, 2013, Order, the Court denied the government's motion to quash on both grounds.  May 28, 2013, Order 13, ECF No. 139.  Then, on May 30, 2013, Ocasio filed his Motion to Compel.  Mot. to Compel 3.  In his Motion to Compel, Ocasio seeks an order from the Court requiring TLO to produce the source code and documentation identified in the two subpoenas.  *Id*. at 2-3.  That same day, May 30, 2013, TLO filed its Motion to Quash the two subpoenas.  Mot. to Quash 10.  On June 3, 2013, Ocasio filed his Response to TLO's Motion to Quash.  Resp. to TLO, LLC's Mot. to Quash Subpoenas as Issued Pursuant to Federal Rule of Criminal Procedure 17 ("Ocasio's Response") 6, ECF No. 143.  On June 4, 2013, TLO filed its Response to Ocasio's Motion to Compel.  TLO, LLC's Resp. to Def.'s Mot. to Compel ("TLO's Response") 4, ECF No. 147.  Finally, that same day, June 4, 2013, TLO filed a supplement to its Motion to Quash.  Supplement to TLO, LLC's Mot. to Quash Subpoenas ("TLO's Supplement") 4, ECF No. 148.  The Supplement primarily contains additional affidavits that support the Motion to Quash.  *See id*. at Exs. A-E.

## II.     DISCUSSION

In its Motion to Quash, TLO argues that the subpoenas must be quashed for a number of reasons.  First, TLO argues that the subpoenas are defective because of procedural issues.  *See* Mot. to Quash 2-5.  Second, TLO argues that Ocasio's request for the CPS source code and documentation is beyond the scope of Rule 17.  *See id*. at 5-7.  Third, TLO argues that the information sought is protected by the law enforcement privilege and trade secret law.  *See id*. at 7-9.

In his Motion to Compel, Ocasio argues that TLO must produce the requested source code and documentation because service of the subpoenas was proper. *See* Mot. to Compel 2-3. Additionally, in his Response to the Motion to Quash, Ocasio argues that his request for the CPS source code and documentation is not beyond the scope of Rule 17 and that the CPS source code and documentation are not protected by any claim of privilege. *See* Ocasio's Resp. 1-4.

Because both the Motion to Quash and the Motion to Compel relate to the same subpoenas and raise the same three issues outlined above, the Court addresses both Motions together.

### A.     Rule 17

Federal Rule of Criminal Procedure 17(c)(1) governs motions for subpoenas duces tecum and states that:

> A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

Fed. R. Crim. P. 17(c)(1).

Further, Federal Rule of Criminal Procedure 17(c)(2) states that "[o]n motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2).

### B.     Procedural Defects with the Subpoenas

TLO argues that the subpoenas are flawed because they were served by mail without consent, served on improper agents, lack appropriate date and time indications for delivery, and incorrectly order the CPS source code and documentation to be delivered to defense counsel. *See* Mot. to Quash 2-5. Ocasio argues that the subpoenas are not technically defective, and, even if they are defective, the subpoenas provided TLO with notice of the requested materials for over

3

a month, yet TLO was unwilling "to answer the subpoenas in any fashion." *See* Mot. to Compel 1-3.

The Court need not resolve these issues because Ocasio has addressed TLO's procedural concerns by serving, on June 3, 2013, a new subpoena on TLO's custodian of records. *See* TLO's Resp. Ex. B ("Second Subpoena"), at 1-3, ECF No. 147-2. This Second Subpoena seeks the same information sought in the previous two subpoenas. *Compare id.*, *with* Mot. to Quash Subpoenas Issued Pursuant to FRCrP 17 Exs. 1-2. Indeed, in its Response to Ocasio's Motion to Compel, TLO states that it was "properly served yesterday, on June 3, 2013 with a subpoena dated May 29, 2013." TLO's Resp. 3. Moreover, the Second Subpoena appears to correct the alleged defects in the previous subpoenas. Specifically, the Second Subpoena is addressed to TLO's custodian of records and directs that the CPS source code and documentation be delivered to this Court without delay. *See* Second Subpoena 1 (commanding TLO's custodian of records to deliver the requested items to this Court). Therefore, because the Second Subpoena has been properly served and seeks the same materials but adequately addresses TLO's procedural concerns, the Court does not decide whether the initial subpoenas were defective.

    **C.**    **Scope of Rule 17**

TLO next argues that the CPS source code and documentation are beyond the scope of Rule 17 because, according to TLO, Ocasio is "merely fishing for any possible support that might be beneficial to him. There cannot be, and is not a specific, discrete use at trial for all of the documents [Ocasio] seeks from TLO." Mot. to Quash 7. To support this position, TLO has included an affidavit of William Wiltse, an employee of TLO. *See* Mot. to Quash Ex. 3 ("First Wiltse Affidavit"), ECF No. 141. In his First Affidavit, Wiltse explains in general terms that CPS is a complex software system that is useful to law enforcement agencies. *See id.* at 3.

Seemingly to provide additional support to this claim, TLO has provided a second affidavit from Wiltse with its Supplement.  *See* TLO's Supplement Ex. D ("Second Wiltse Affidavit"), ECF No. 148-4.  In his Second Affidavit, Wiltse states that "[a]t more than 4.7 million lines of code, it would be difficult for TLO to compile and virtually impossible for receiving parties to review prior to trial.  This line count does not include source code for the proprietary database storage systems designed by TLO."  *Id*. at 2.  Wiltse also suggests that if information about the CPS system were disclosed, it would harm ongoing investigations across the world.  *See id*.  Ocasio, meanwhile, contends that the information sought is relevant to his Motion to Suppress and that TLO has not demonstrated that his request is either unreasonable or oppressive.  *See* Ocasio's Resp. 3.

    A subpoena is only within the scope of Rule 17 if the party seeking the subpoena can show that the materials sought are relevant, that they are admissible, and that they are requested with adequate specificity.  *See United States v. Arditti*, 955 F.2d 331, 345 (5th Cir. 1992) (citing *United States v. Nixon*, 418 U.S. 683, 697-702 (1974)).  A Rule 17(c)(1) subpoena is not a discovery device nor does it provide a means of discovery beyond the discovery provided for in Federal Rule of Criminal Procedure 16.  *Nixon*, 418 U.S. at 700; *Arditti*, 955 F.2d at 345 (citing *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951)).  "The specificity and relevance elements require more than the title of a document and conjecture as to its contents."  *Arditti*, 955 F.2d at 345.  If the moving party cannot reasonably specify the information contained or believed to be contained in the documents sought, but merely hopes that something useful will turn up, this is a sure sign that the subpoena is being misused.  *United States v. Noriega*, 764 F. Supp. 1480, 1493 (S.D. Fla. 1991).  The subpoena must be sought in good faith and not as a "fishing

expedition." *Arditti*, 955 F.2d at 347.  Finally, a court may quash a "subpoena if compliance would be unreasonable or oppressive."  Fed. R. Crim. P. 17(c)(1).

The Court has addressed the bulk of this argument before and found that Ocasio's request is well within the scope of Rule 17.  Specifically, in its May 28, 2013, Order, the Court rejected a similar scope argument made by the government and found that "it is plain that the information [Ocasio seeks] is relevant, admissible, requested with adequate specificity, and sought in good faith."  May 28, 2013, Order 10 (citing *Nixon*, 418 U.S. at 699).  In that Order, the Court noted that Ocasio's request met the *Nixon* relevancy requirement because "the CPS source code and documentation are relevant to resolving [Ocasio's] pending Motion to Suppress and determining whether or not the government's use of the CPS software constituted a Fourth Amendment violation."  *Id*.  Additionally, the Court found that Ocasio's request met the other requirements of *Nixon* and therefore was within the scope of Rule 17.  *See id*. at 9-12 (detailing why the request was within the scope of Rule 17).

TLO has presented little case law, argument, or evidence that would suggest that a different result is warranted with regard to its Rule 17 scope argument.  The Court notes that TLO has cited to no cases that would suggest a different outcome is appropriate.  *See* Mot. to Quash 5-7.  Nor is the Court persuaded by TLO's claim that Ocasio is "merely fishing" for evidence because this contention is not accompanied by any explanation, and is in contradiction to the Court's previous findings that the information sought is relevant and specific.  *See* May 28, 2013, Order 9-12.  Ocasio has sought the CPS software and documentation for a specific reason and purpose and the size of the software does not change this.

Moreover, Ocasio's request is not unreasonable or oppressive.  TLO never directly raises this concern.  *See* Mot. to Quash 5-7 (claiming that Ocasio's request is a fishing expedition but not discussing the unreasonableness or oppressiveness of compliance).  This argument is only hinted at

in Wiltse's Second Affidavit to extent that he suggests that the CPS spans many lines of code, will take a significant amount of time to compile, and harm investigations. *See* Second Wiltse Aff. 2. But TLO never explains the significance of the number of lines of source code in the software and the Court can think of none. *See generally* TLO's Supplement. Wiltse also states that "it would be difficult for TLO to compile" the CPS source code in time for trial. Second Wiltse Aff. 2. TLO fails to explain how this process is difficult, what makes compliance difficult, or why this is a valid consideration for the Court. *See generally* TLO's Supplement. Further, Wiltse's statement that the CPS source code would be "impossible" to review before trial is immaterial. *See id*. This is because it is not proper for TLO or Wiltse to presuppose the results of Ocasio's inspection of the CPS source code and documentation. Finally, any risk of disclosure and harm to ongoing investigations can be mitigated with a protective order, as explained in more detail below.

In sum, TLO has not presented law or evidence that would suggest that the Court's prior ruling on this issue should be altered.[1] *See Nixon*, 418 U.S. at 699.

### D.    Privilege

Lastly, TLO argues that CPS source code and documentation should not be disclosed because they are protected by the law enforcement privilege and trade secret law. Mot. to Quash 7-9. Specifically, TLO argues that "[d]isclosure of the records and data requested in Defendant's subpoena would significantly degrade the usefulness of CPS as a worldwide investigative tool, as well as compromising numerous ongoing criminal investigations." *Id*. at 8. To support this position, TLO has included five affidavits to its Supplement that detail the importance of secrecy

---

[1] Wiltse also states that the CPS software accesses a voluminous and sensitive database of over ten billion records. *See* Second Wiltse Aff. 2. Again the relevance of the size and nature of this data is not explained. *See generally* TLO's Supplement. But even so, this statement is not relevant because Ocasio has not sought access to any data in his Second Subpoena. *See* Second Subpoena 1-3 (requesting source code and documentation but not data).

regarding CPS to criminal investigations.  *See* TLO's Supplement Ex. A, at 1-3, ECF No. 148-1 (affidavit of TLO's general counsel explaining the importance of secrecy and widespread use of CPS); TLO's Supplement Ex. B, at 1-2, ECF No. 148-2 (affidavit of TLO employee explaining the national use of CPS); TLO's Supplement Ex. C, at 1-2, ECF No. 148-3 (affidavit of Canadian police officer explaining the utility of CPS in Canada and stating that if the workings of CPS were revealed that offenders would change techniques); Wiltse's Second Aff. 1-2 (explaining the size of the CPS system); Wiltse's First Affidavit (describing CPS in general terms).  Based on these concerns, TLO argues that the information sought is protected by privilege.  Mot. to Quash 7-9.  In response, Ocasio states that "none of these concerns would preclude production as this Court need only impose the standard non-disclosure protective order routinely employed in trade secret cases.  Regardless of the privilege asserted, a protective order imposes sufficient safeguards to protect TLO's concerns, and no fact or argument presented by TLO suggests otherwise."  Ocasio's Resp. 4.

"[T]he purpose of the [law enforcement] privilege in the Fifth Circuit is to protect from release documents relating to an ongoing criminal investigation."  *In re U.S. Dep't of Homeland Sec.*, 459 F.3d 565, 569 n.2 (5th Cir. 2006).  The privilege "prevents the 'disclosure of law enforcement techniques and procedures, [preserves] the confidentiality of sources, [protects] witnesses and law enforcement personnel, [safeguards] the privacy of individuals involved in an investigation, and otherwise [prevents] interference with an investigation.'"  *Id*. at 569 n.1 (alterations in original) (citing *In re Dep't of Investigation*, 856 F.2d 481, 483-84 (2d Cir. 1988)).  However, as the Court explained in its May 28, 2013, Order, the law enforcement privilege is limited to the extent that it applies only to *government* documents.  May 28, 2013, Order 4-5 (citing *Dep't of Homeland Sec.*, 459 F.3d at 570).

Once again, the Court has addressed the bulk of this privilege argument in its May 28, 2013, Order. *Id*. at 3-9.  In that Order, the Court found that the government could not assert the law enforcement privilege as to the CPS source code and documentation because neither were government documents. *Id*. at 4-5.  The Court also found that, even if the source code and documentation were government documents, the privilege would not be applicable in this instance based on the facts of the case. *Id*. at 4-9.

TLO has presented no case law or evidence that would suggest that a different result is warranted with regard to its privilege argument.  TLO presents the same privilege argument as the government.  *Compare* Mot. to Quash 7-9, *with* Mot. to Quash Subpoenas Issued Pursuant to FRCrP 17, 9-10.  The only difference is that TLO has offered a number of additional affidavits that indicate that the secrecy of the CPS system is important.  The Court first notes that none of these affidavits explain why providing the CPS source code and documentation for use in this case would unavoidably lead to the degradation of the CPS system.  But second, the Court already considered the value of secrecy to the CPS system in its prior ruling on this issue.  *See* May 28, 2013, Order 6-7.  Third, the CPS source code and documentation are still not government documents and therefore not covered by the law enforcement privilege.  *See id*. at 4-5.  Fourth, even if the CPS source code and documentation were government documents, TLO has provided no reasons that affect the Court's prior conclusion that the facts of this case do not warrant the application of the privilege in this instance.  *See id*. at 4-9.  Fifth, the Court believes that any privacy concerns can be mitigated by the entry of a protective order.  For all of these reasons the Court finds that the law enforcement privilege is not applicable.

Finally, the Court finds any claim of trade secret privilege to be inappropriate.  TLO summarily discusses this claim without fully developing it.  *See* Mot. to Quash 7-9.  Even if fully

developed, this argument would not be persuasive because any trade secret relating to CPS can be maintained with a proper protective order, which the Court will enter in this case. *See, e.g.*, *M-I LLC v. Stelly*, 733 F. Supp. 2d 759, 802 (S.D. Tex. 2010) ("It is within the sound discretion of the trial court to decide whether trade secrets are relevant and whether the need outweighs the harm of disclosure. Likewise, if the trade secrets are deemed relevant and necessary, the appropriate safeguards that should attend their disclosure by means of a protective order are also a matter within the trial court's discretion.").

Accordingly, the Court once again finds that the CPS source code and documentation are not protected by privilege.

## III. CONCLUSION

For the reasons stated above, the Motion to Compel is **GRANTED** and the Motion to Quash is **DENIED**. Accordingly, the items sought by Ocasio must be delivered to the Court on or before 10:00 a.m. Mountain Daylight Time on June 10, 2013, for delivery to defense counsel. A protective order shall issue forthwith.

**SO ORDERED.**

SIGNED this 6th day of June, 2013.

_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE