**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Case No. EP-11-CR-2728-KC-1** |
| | ) | |
| **ANGEL OCASIO** | ) | |

**THIRD SUPPLEMENTAL MOTION IN LIMINE AND SUPPORTING MEMORANDUM**

ANGEL OCASIO (hereinafter "Mr. Ocasio") is charged in several counts with offenses related to possession, receipt and distribution of child pornography. He respectfully submits this Third Supplemental Motion in Limine in anticipation of jury selection presently scheduled to take place on June 21, 2013. In support thereof, he would show as follows:

**I.      BACKGROUND AND PRELIMINARY MATTERS**

The present case has been the subject of two mistrials. In these prior proceedings, this Court has ruled on numerous motions in limine. *See* Doc. Nos. 47, 60, 63, 66, 67 and 70. It is assumed that this Court's rulings with regard to these Motion in Limine remain in effect absent a request to reconsider the same. In the event this Court considers these matters unresolved, all arguments set forth in Mr. Ocasio's Motion in Limine (Doc. No. 60), Supplemental Motion in Limine (Doc. No. 63), and Second Supplemental Motion in Limine (Doc. No. 67), are hereby incorporated by reference and re-urged.

**II.      GOVERNMENT'S NOTICE OF INTENT NOTICE OF INTENT TO USE**
**CERTIFIED RECORDS OF REGULARLY CONDUCTED BUSINESS ACTIVITY**

In this Notice filed May 14, 2013, the Government serves notice of its intent to offer "records from Time Warner Cable relating to customer account details and Internet Protocol (IP) assignments for IP 24.162.195.168." Notice at 1 (Doc. No. 130). This Notice further declares "the records will be introduced via a written certified declaration from the custodian of record and/or an employee of that company." Absent production of (1) the specific document and (2) a properly issued certification as defined by Federal Rule of Evidence 902(11), the defense would object to introduction of this evidence.

**III.     NOTICE OF INTENT TO USE EVIDENCE BY USA AS TO ANGEL OCASIO PURSUANT TO FEDERAL RULE OF EVIDENCE 404(B) (DOC. NO. 131)**

This Notice (Doc. No. 131) appears substantially similar, if not identical to, the Notice previously filed (Doc, No. 50). The defense previously moved to exclude this material, for example child erotica, through its Motion in Limine, Mot. at 4-7 (Doc. No. 60), and this Court granted such request. The Government's Notice does not acknowledge this prior ruling, nor the fact that this material was ordered redacted from the FTK Report prior to submission to the jury. If this Notice is offered as an invitation to reconsider this Court's prior ruling on that matter, then this Court is respectfully asked to deny the invitation as the proposed evidence suffers from the same defects prompting this Court's prior Order, and no effort is made to justify a different outcome.

**IV.     GOVERNMENT NOTICE OF EXPERT TESTIMONY**

The Government has, most recently, filed its document entitled "Notice of Expert and Memorandum of Law" (Doc. No. 124). The four specific experts identified are (1) Sergeant Matthew Pilon,[1] who allegedly will "provide the jury with an overview of the how peer-to-peer software operates and facilitates the nearly anonymous trading of digital files, files, including those that contain images of children engaged in sexually explicit activity, via the Internet," Mem. at 1, (2) Computer Forensics Agent Demetrio Medina, who "will testify as to the child sexual abuse images found on digital media belonging to defendant and the manner in which such was discovered," *id.* at 2, (3) Computer Forensics Agent Mark R. Martinez, who allegedly "will testify as to the child sexual abuse images found on digital media belonging to defendant and the manner in which such was discovered, *id.*, and (4) Computer Forensics Agent Joseph Byers, who allegedly "will testify as to the child sexual abuse images found on digital media belonging to defendant and the manner in which such was discovered," *id.* The Government alleges that Agent Medina's testimony is defined by an unspecified "agent's report" and that the testimony of Agents

---

[1]The prior Notice of Expert and Memorandum of Law (Doc. No. 29) filed for Sergeant Pilon declared he "will be testifying as to factual matters and will not be asked to render an opinion." Notice at 2. It remains unclear how he could be characterized as a fact witness rather than an expert witness offering an opinion divorced from the actual facts of the present case.

Martinez and Byers is supported by a "forensic report."

On June 6, 2013, the defense filed its Notice of Defendant's Demand for Disclosure of Government Expert(s) Pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G) (Doc. No. 149). The Government responded with its Notice of Government's Objections to Defendant's Demand for Disclosure of Experts and Government's Demand for Reciprocal Discovery (Doc. No. 152). The demand specifically sought a written summary of the testimony of all experts and identification of the specific production it considered to support the same given the non-specific discovery references in the Government's notice.

In its Objections, the Government focuses on the concept of opinions and specialized knowledge. Such was not the primary concern in the demand, but rather the absence of a written summary for the proposed testimony. Ultimately, the Government cites *United States v. Ganier*, 468 F.3d 920 (6th Cir. 2006)(holding use of forensic software is not a matter of lay testimony), in distinguishing notices involving specialized skill rather than opinion, but overlooks the fundamental requirement of notice when expert testimony is proposed.

As stated in response to a Rule 16(a)(1)(G) concern raised previously in a child pornography case involving computer forensic examinations:

> The law is clear that [t]estimony regarding law enforcement protocols and evidence gathering is the product of specialized knowledge, and thus, constitutes expert testimony under Rule 702. *United States v. Oriedo*, 498 F.3d 593, 603 (5th Cir. 2007). It is also clear based on the government's response that [the agent's] testimony will not be limited to what she observed in the search, but rather she will bring her experience as an investigator to bear on those observations and make connections for the jury based on her specialized knowledge. *Oriedo*, 498 F.3d at 603. Consequently, this information falls squarely within the dictates provided by Rule 16(a)(1)(G), and the defendant's motion shall be granted. The government is hereby ordered to provide to the defendant that information mandated by Rule 16(a)(1)(G) of the Federal Rules of Criminal Procedure. This includes a written summary of any testimony the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial.

*United States v. Owens*, 2009 WL 2449822, Crim. No. 2:09CR6-DPJ-DAS, at *1 (N.D. Miss. Aug. 7, 2009).

As the Government effectively concedes that the testimony proposed as to all witnesses

qualifies as expert testimony, the focus becomes the sufficiency of its disclosure with regard to the

identified witnesses.  In this regard, it is easily apparent that the degree of disclosure nowhere

approaches that required by Rule 16(a)(1)(G).   As one district court stated in response to this

particular issue

> Pursuant to Rule 16(a)(1)(G), at the defendant's request, the government must give the defendant a written summary of any testimony that the government intends to use under Rule 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial. The summary "must describe the witness's opinion, the bases and reasons for those opinions, and the witness's qualifications." FED. R. CRIM. P. 16(a)(1)(G).

> The Advisory Notes to the 1993 Amendment explain that Rule 16(a)(1)(G) and the rule requiring the defendant to provide reciprocal discovery were "intended to minimize surprise that often results from unexpected expert testimony, reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination." The Advisory Notes envision the summary as comprehensive, indicating that it "should cover not only written and oral reports, tests, reports, and investigations, but any information that might be recognized as a legitimate basis for an opinion under Federal Rules of Evidence 703, including opinions of other experts."

> The Court has reviewed the Government's disclosure and finds that it does not meet the requirements of Rule 16(a)(1)(G) in that, although it describes the witness's opinion, it does not provide an adequate basis or reasons for such opinion, falling short of the demands of the rule, as clarified in the Advisory Notes. The expert disclosures do not provide [the defense] with a fair opportunity to test the merit of the expert's testimony through focused cross-examination.

*United States v. Fawkes*, 2005 WL 1313410, No. CRIM.2004-0172, at *1 (D.V.I. May 31,

2005).

*Fawkes* correctly cites the purpose of the written summary and concludes that the

summary shall be comprehensive to permit focused cross-examination.  A single line summary of

the testimony to be offered cannot possibly meet this rigorous standard.  Nor is the defense

required to search for possible testimony in documents produced, as the written summary of

testimony explains and limits the proposed testimony while other discovery identifies possibilities.

Stated otherwise, the Government and defense are limited by the summaries provided whereas

discovery includes possible rather than definite topics for the same testimony limited only by rules

of evidence.

The only possible summary of testimony offered might be that of Sergeant Pilon by virtue of his PowerPoint presentation.  However, the origins of any of the concepts presented remains unclear.  None of the concepts presented contain references to authority, scientific or otherwise.  However, in contrast to all other expert witnesses, this provides some indication of what he may offer as expert testimony, but still represents disclosure at a level far from the degree of specificity required.  Given the brevity of the summary provided, it remains unclear if Sergeant Pilon is inclined to hold fast to what is in the slides or rather intends to use the PowerPoint slides as talking points, in which case his testimony becomes far from clear.

The remaining witnesses do not possess even that modest presentation of testimony.  Apparently, the defense shall learn what these experts did in their investigation from the witness stand.  The specifics of these investigations involving computer forensic examinations to various degrees will be unveiled at a later date.  This Court is respectfully invited to assess what is actually known from this summary, but the defense remains at a loss as to what these individuals may have to offer based on the information provided to date.

It is clear that all of these remaining individuals are  members of the computer forensics division of HSI.  It would appear that they would all like to discuss the specific computer forensic examinations performed, each of varying degrees of duration and scope.  No specifics as to these examinations have been provided, and none can reasonably be inferred from the current disclosure.  The only apparent report produced is the FTK Report, and that report is largely limited to a listing of child pornography and child erotica files with limited file details.  The report does not so much as hint as to what was searched or how these files were recovered.  This Court is respectfully asked to review this report and identify which, if any, of these files listed were viewable without forensic software, were found in unallocated space, or were 'carved'.  If the report lacks this basic forensic information, then it cannot be characterized as possessing any

value with regard to explaining the examination itself.[2]  Testimony relying on this bare reference to favorable findings offers no insight into processes employed in conducting the forensic examination.  Furthermore, this information is virtually unassailable on cross-examination by the defense or defense expert because it is so vague as to be analytically useless in determining what these files may represent to the Government's case-in-chief.  Given the sparse details provided by the Government to date with regard to these alleged expert examinations, the defense remains concerned that the Government's investigation may only now commence having received the report of expert examination produced by the defense.  However, should this act of disclosure culminate in a written summary compliant with Rule 16, and thereby limit the surprise testimony offered by Government witnesses at trial, then it will be considered a worthwhile endeavor.[3]

Ultimately, as acknowledged by the Government, these experts intend to discuss highly technical concepts specific to forensic examinations.  This is not a matter of lay opinion or basic facts typical of the question and answer inquiry found in the typical drug importation case at a port of entry.  The testimony proposed involves advanced forensic software, specific inquiries and

---

[2]For example, if all computer files identified in this report were stored on the computer and not deleted, no forensic software would be required to produce the details in the report as one could simply view these files using the 'details' view on Microsoft Windows.  When undersigned counsel raised questions as to the duplicative listings of files during the first status conference, counsel for the Government did not offer this basic explanation as to why the files might have more than one appearance in the report.  If that occasion did not warrant an explanation, it remains unclear when the vagaries of this report might be unveiled.

[3]Counsel for the Government indicated in a recent hearing in another case that it may well call Ms. Loehrs's testimony into question under *Daubert*.  Given the lack of information it has provided to date with regard to its own experts and the procedures that they have employed, it may well expect a similar approach as to all its proposed experts should this information present cause for concern.  At present, there are no details to suggest any approach, let alone a proper approach, employed by these witnesses in conducting these alleged examinations sufficient to merit raising a *Daubert* concern.  Upon receipt of information provided through a proper written summary for all witnesses, the defense may well revisit this issue.   There is no presumption of competency attached to the forensic examinations of agents, thus there should be no reason to anticipate their methodology, once articulated, would be immune from scrutiny.  Given the absence of limitations imposed on their review of computer evidence under 18 U.S.C. § 3509, as compared to the "meaningful availability" standard applied to private examiners, one may reasonably anticipate higher expectations in the conduct of the examinations of federal agents.  However, in this case, little can be said of the searches or results associated with these investigations.

formal findings.  The Government has not offered, individually or in sum, disclosure that

approximates the 181-page report it now possesses from the defense.  It that report, Ms. Loehrs

summarizes her precise opinions with regard to awareness, possession, and receipt/distribution,

with specific files and details supporting her opinion.  The Government cannot claim that it lacks

the ability to cross-examine her intelligently with this information in hand.  The same cannot be

said of the defense, as the Government remains reluctant to provide the disclosure that should

have preceded the defense's obligation to reciprocate.

   In light of the foregoing, the defense requests that the local forensic examiners be

excluded to the extent they intend to discuss the substance of forensic examinations that have not

been described in a detailed, written summary.  In the alternative, this Court is respectfully asked

to direct that the Government produce detailed written summaries that include the precise

methods employed, items of interest sought through the individual examinations, and findings

with regard to those items of interest, not later than June 21, 2013.

   With regard to Sergeant Pilon, this Court is respectfully asked to direct that additional

information be provided if he is to testify.  The defense acknowledges that he may satisfy his

summary requirement by annotating the slides in his presentation with the authority for the

information provided in the individual slide, and thereafter providing an advance copy of this

presentation to the defense.  PowerPoint contains a feature permitting 'comments' to slides

invisible to the audience when presenting, and such would be sufficient in his case when

annotating his authority.  However, Sergeant Pilon must declare whether his testimony is limited

to the contents of the slides, or whether he merely uses the PowerPoint presentation as a guide for

testimony that expounds upon the slides.  In the latter case, this Court is respectfully asked to

order that he provide the comprehensive written summary applicable to the other experts

identified by the Government with reference to the authority relied on in presenting whatever

topics he may choose to include.

## V.    FTK REPORT SUBMITTED TO JURY

This Court previously ordered that non-child pornography files be redacted from the FTK report submitted to the jury.  As stated previously, the files identified in the FTK report do not describe whether the files were viewable without forensic software.  This may leave the jury with the impression that all files identified were resident on the computer and identifiable simply by turning the computer on.  Such is not the case.

Given the Government's interest in offering this list of files to the jury, this Court is respectfully asked to direct that the Government clearly annotate which files could be identified on the computer without forensic software, and which were invisible to the computer user (i.e., carved or in unallocated space) without the use of forensic software.  At present this computer file list represents what Government forensic examiners 'found', but the absence of information provided in conjunction with this report permits the jury to infer unreasonably that these files would be evident to a user without specialized software.

It is unclear why this standard report excludes information easily includable as to whether the files were deleted and when such deletion took place.  Given the length of this report and the absence of explanatory information contained therein, the failure to include these file details has a strong potential to mislead and confuse the jury as to what a non-expert computer user might see on the computer.  As presented, it cannot be said that the probative value of the report substantially outweighs the prejudicial effect under Rule 403.

In light of the foregoing, this Court is respectfully asked to exclude the FTK report in its present form from submission to the jury as an exhibit.  In the alternative, this Court is asked to direct that all computer files that could not be seen without forensic software (1) be clearly identified as "not viewable without use of advanced computer file retrieval software"; (2) be identified through use of color coding system, *e.g.*, black type for visible files, blue for deleted files,(3) be organized under subject headings 'viewable' and "not viewable" or (4) be displayed with the 'isDeleted' field active and the date on which the file was deleted.  In so doing, the jury

will be less likely to assume the 70 or more pages of computer files provided are simply resident on the system in a magnitude that would be obvious to the computer user.

## VI.   SERGEANT PILON'S PRESENTATION REGARDING PEER-TO-PEER SEARCHES

This Court has previously ruled that Sergeant Pilon's qualifications to discuss any topic involved in testimony will be addressed through voir dire prior to his testimony.  The defense is, however, concerned with the content of that portion of his presentation that illustrates searches on peer-to-peer networks.  In a portion of his presentation, Sergeant Pilon apparently constructs a hypothetical search by a child pornographer and the results returned through those searches.  If the purpose of this exercise is to demonstrate how peer-to-peer search software functions, then this result could readily be obtained through non-pornographic search illustrations.  It is respectfully submitted that such is not the result likely intended through this illustration.

The salacious terms and file names concocted by Sergeant Pilon for a presentation that appears more tailored to law enforcement training than to assist a jury in understanding peer-to-peer sharing concepts has no place in a child pornography trial in which the danger of unfair prejudice is already extreme.  Any possible probative value of this information, certainly when offered by an expert witness if Sergeant Pilon passes muster, would be substantially outweighed by its prejudicial impact or potential for misleading the jury. *See* FED. R. EVID. 403.  It takes little imagination to see how this portion of the presentation is designed to paint the picture of how the typical child pornographer operates in order to invite a jury to characterize a defendant in the same manner regardless of the facts, which would run afoul of the request in the first Motion in Limine to exclude profile evidence.  Furthermore, the jury may, through this presentation, mistakenly accept this hypothetical search as a fact from the case before it, and thereby without legitimate basis instill in the minds of jurors that the agents involved possess a greater understanding of events with regard to a defendant than the evidence may warrant.  Finally, this presentation would add additional child pornography concepts and terms unnecessarily to a case that will not want for the same.  Given a case that will likely already fatigue the jury with shocking

terms and phrases, there is no need to offer unnecessary additional issues to a case already rife with prejudicial potential.

In light of the foregoing, this Court is respectfully asked to exclude this portion of Sergeant Pilon's presentation or direct that it be revised to address non-pornographic illustrations of searches.

## VII.    REQUESTED RELIEF AND PROCEDURAL MATTERS

Defendant prays that this Court order the Government and its witnesses not to allude to any of the above matter without first obtaining the Court's ruling as to admissibility outside the hearing of the jury; and that the Court will exclude such evidence at trial.

MAUREEN SCOTT FRANCO
Federal Public Defender

/s/

MICHAEL GORMAN
Assistant Federal Public Defender
Federal Building
700 E. San Antonio, D-401
El Paso, Texas  79901
 (915) 534-6525
*Attorney for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on the 12th  day of June, 2013, I electronically filed the foregoing with the Clerk of Court using CM/ECF system which will send notification of such filing to the following:

J. Brandy Gardes
Assistant U. S. Attorney
700 E. San Antonio, Suite 200
El Paso, Texas 79901


/s

_____
Michael Gorman
Attorney for Defendant

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Case No. EP-11-CR-2728-KC-1** |
| | ) | |
| **ANGEL OCASIO** | ) | |

**ORDER**

On this date came on to be heard Defendant's Motion in Limine.  After considering the same, the Court enters the following Order:

Defendant's Motion in Limine is GRANTED as to the following matters:

1.    certified records of business activity;

2.    evidence or argument concerning child erotica;

3.    the Government's expert testimony;

4.    the FTK report; and

5.    that portion of Sergeant Matthew Pilon's testimony concerning illustrations of peer-to-peer searches;

It is ORDERED that the Government shall not introduce, allude to or argue any of the above before the jury until it has first approached the bench and obtained the Court's ruling on the admissibility of such matters.

It is further ORDERED that the Government shall instruct its witnesses that they are subject to the terms of this Order and are similarly not to allude to or go into such matters until the Court has ruled on their admissibility, outside the presence of the jury.

ORDERED and ENTERED on this the _____ day of June, 2013.


_____
KATHLEEN CARDONE
UNITED STATE DISTRICT JUDGE