IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| v. | § | EP-11-CR-2728-KC |
| | § | |
| ANGEL OCASIO. | § | |

## ORDER

On this day the Court considered Defendant Angel Ocasio's Motion to Suppress and Supporting Memorandum ("Motion"), ECF No. 85.  For the reasons set forth below, the Motion is **DENIED**.

## I.      BACKGROUND

On November 9, 2011, in the Western District of Texas, El Paso Division, a grand jury returned a four-count indictment against Ocasio.  *See generally* Indictment, ECF No. 9.  Count One of the Indictment charges Ocasio with, beginning on or about February 27, 2009, and continuing until on or about October 6, 2011, knowingly receiving child pornography.  *Id*. at 1.  Count Two of the Indictment charges Ocasio with, on or about April 11, 2011, knowingly distributing child pornography.  *Id*. at 2.  Count Three of the Indictment charges Ocasio with, on or about April 11, 2011, knowingly possessing child pornography.  *Id*.  Count Four of the Indictment charges Ocasio with, on or about October 6, 2011, knowingly possessing child pornography.  *Id*. at 3.

On January 22, 2013, three days prior to the scheduled date of his trial, Ocasio filed the instant Motion.  Mot. 18.  The government filed its Response to the Motion on March 11, 2013.  Government's Resp. to Def.'s Mot. to Suppress ("Response") 40, ECF No. 108.  Two days later, on March 13, 2013, Ocasio filed his Reply.  Def.'s Reply to Government's Resp. to Mot. to

Suppress ("Reply") 10, ECF No. 110.  Next, on April 4, 2013, the Court held an evidentiary

hearing to address issues raised in the Motion, Response, and Reply.  *See* March 26, 2013, Order

2-3, ECF No. 112 (stating issues to be resolved at the April 4, 2013, hearing).  At the hearing, the

Court reminded defense counsel that the purpose of the hearing was to present evidence

supporting the Motion.  Defense counsel presented no evidence and instead stated that the

Motion required the source code and documentation relating to a piece of software, named the

Child Protection System or CPS, which the government used in its investigation of this case.

On April 8, 2013, Ocasio sought to compel production of these CPS materials from the

government pursuant to Federal Rule of Criminal Procedure 16.  Mot. to Compel Produc. of

Materials Pertaining to Peer-to-Peer Investigative Software 8, ECF No. 117.  On April 26, 2013,

the Court granted in part and denied in part the motion to compel because only some of the CPS

materials requested were under the government's control and therefore discoverable under Rule

16.[1]  April 26, 2013, Order 4-6, ECF No. 122.  The Court found that the remaining CPS

materials were in the possession of a private company, TLO, LLC.  *See id*. at 4.  On May 1,

2013, Ocasio served on TLO a subpoena seeking the remaining CPS materials.  *See* Mot. to

Compel Produc. of Materials and Information Demanded by Subpoena 6, ECF No. 140 (copy of

the subpoena).  Because TLO did not initially comply with this subpoena, on May 30, 2013,

Ocasio sought to compel production of the remaining CPS materials pursuant to Federal Rule of

Criminal Procedure 17.  *Id*. at 4.  The Court granted this motion to compel and ordered TLO to

produce the requested CPS materials on or before June 10, 2013.  June 6, 2013, Order 10, ECF

No. 150.  On June 10, 2013, TLO provided the requested CPS materials to defense counsel.

---

[1] Ocasio has filed a motion for reconsideration of this order.  *See* Mot. for Reconsideration of Order of April 26, 2013, ECF No. 126.  The Court has taken this motion under advisement.  *See* May 20, 2013, Order 2, ECF No. 132.

II.     **DISCUSSION**

In his Motion, Ocasio moves to suppress evidence seized as a result of an October 6, 2011, search of his residence.  Mot. 1.  This evidence includes files containing child pornography found on his computer and statements made by Ocasio.  *See id*. at 16-17.  Ocasio's suppression argument centers on the government's use of the CPS software.  *See id*. at 1.  Ocasio notes that prior to the search of his residence, the government used the CPS software, on April 11, 2011, to discover that thirty-five files associated with child pornography were present on his computer.  *Id*. at 1-2; *see also* Mot. Ex. A ("Search Warrant"), at 1-2, ECF No. 85-1 (signed warrant for search of Ocasio's residence); Mot. Ex. A ("Search Warrant Affidavit"), at 3-30, ECF No. 85-1 (sworn statement explaining the use of CPS in this case).[2]  This information was then used in the Search Warrant Affidavit to secure the Search Warrant for Ocasio's residence that yielded evidence of and statements regarding child pornography.  *See* Mot. 1-2; Search Warrant 23-29.

Ocasio argues that the government's use of the CPS software creates two independent grounds for suppression.  First, Ocasio claims that the government's April 11, 2011, use of the CPS software violated the Fourth Amendment of the United States Constitution.  *See* Mot. 12-19.  On this point, Ocasio argues that suppression is necessary because the CPS software performed an impermissible warrantless search of his computer.  *See id*.  Ocasio argues that because information was gathered by the CPS software in violation of the Fourth Amendment, the Search Warrant Affidavit based on this evidence was improper, and therefore the evidence gathered as a result of the Search Warrant is subject to suppression.  *See id*.  Second, Ocasio claims that the government omitted and misrepresented certain information in the Search Warrant Affidavit regarding the use of the CPS software in its investigation.  *See id*. at 3-12.  On

---

[2] Exhibit A contains inconsistent internal pagination and also contains both the Search Warrant and Search Warrant Affidavit.  Therefore, this Order references the page numbers supplied at the top of each page of the Search Warrant and Search Warrant Affidavit.

this point, Ocasio argues that suppression of evidence gathered as a result of the Search Warrant is mandated by *Franks v. Delaware* because of the omissions and other misstatements in the Search Warrant Affidavit. *See id.* at 11-12 (citing *Franks*, 438 U.S. 154, 155-56 (1978)).

The government argues that both of Ocasio's claims are without merit. *See* Resp. 9-38. As to Ocasio's claim that the CPS software violates the Fourth Amendment, the government states that there is no evidence that its use of the software exceeded the scope of a permissible search under the Fourth Amendment. *See id.* at 14-29. And as to Ocasio's claim of omissions and misstatements in the Search Warrant Affidavit, the government denies that these defects exist and notes that even if the Search Warrant Affidavit is flawed, the good faith exception cures any defects. *See id.* at 13, 30-38.

A.    **Fourth Amendment Challenge**

The Fourth Amendment of the United States Constitution states in part that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. "A 'search' occurs for Fourth Amendment purposes when the government violates a subjective expectation of privacy that society considers objectively reasonable." *United States v. Runyan*, 275 F.3d 449, 457 (5th Cir. 2001) (citing *Katz v. United States*, 389 U.S. 347, 361 (1967)); *see United States v. Slanina*, 283 F.3d 670, 675 (5th Cir. 2002) *vacated on other grounds*, 537 U.S. 802 (2002). Evidence gathered from an unlawful search is barred from use at trial under the exclusionary rule. *See, e.g.*, *United States v. Houltin*, 566 F.2d 1027, 1030 (5th Cir. 1978) ("Under the exclusionary rule, evidence obtained in violation of the fourth amendment cannot be used in a criminal trial against the victim of the illegal search and seizure.").

The United States Court of Appeals for the Fifth Circuit has articulated five factors to consider when determining whether there has been a search or seizure that violates the Fourth Amendment:

> (1) whether the defendant has a property or possessory interest in the thing seized or the place searched (2) whether he has the right to exclude others from that place (3) whether he has exhibited a subjective expectation of privacy that it would remain free from governmental intrusion (4) whether he took normal precautions to maintain privacy and (5) whether he was legitimately on the premises.

*Runyan*, 275 F.3d at 457 (quoting *United States v. Ibarra*, 948 F.2d 903, 906 (5th Cir. 1991)) (internal quotation marks and alterations omitted).

It is the defendant's initial burden to prove, by a preponderance of the evidence, that a search constitutes a Fourth Amendment violation.  *See United States v. Brathwaite*, 458 F.3d 376, 380 (5th Cir. 2006); *United States v. Parks*, 119 F. App'x 593, 597 (5th Cir. 2004).  If the defendant meets this initial burden, the burden then shifts to the government to prove that the exclusionary rule should not apply to the evidence derived from the illegal search.  *Brathwaite*, 458 F.3d at 380.  The exclusionary rule will not apply if the government successfully raises the independent source or inevitable discovery exceptions.  *See, e.g.*, *United States v. Hassan*, 83 F.3d 693, 695, 697 (5th Cir. 1996) (explaining the requirements of the independent source exception); *United States v. Lamas*, 930 F.2d 1099, 1101-02 (5th Cir. 1991) (explaining the requirements of the inevitable discovery exception).

In this case, Ocasio's Fourth Amendment challenge fails because he has not demonstrated by a preponderance of the evidence that the government's use of the CPS software on April 11, 2011, constituted an illegal search of his computer.  *See Brathwaite*, 458 F.3d at 376.  Therefore, because the information gathered by the CPS software was not in violation of the Fourth Amendment, the Search Warrant Affidavit based on this evidence was not improper, and the evidence gathered as a result of the Search Warrant is not subject to suppression.  *See id.*

Ocasio's Fourth Amendment argument is based on his claim that the CPS software searched his computer for files that were not publicly shared with others.  *See* Mot. 12.  While Ocasio admits that he was using a file sharing program to publicly share files with others on the Internet, Ocasio claims that the CPS software impermissibly searched for and located files "that [were] not publicly available, [were] hidden, [and were] not designated for sharing."  *See id*. at 12-16.  Ocasio characterizes the use of the CPS software in this case as a "warrantless intrusion into parts of the computer not chosen to be made public."  *Id*. at 15.

To support his argument that the CPS software looked beyond publicly shared files, Ocasio has presented an affidavit of a computer examiner named Tami Loehrs.  *See generally* Mot. Ex. B ("Affidavit"), ECF No. 85-2.  In her Affidavit, Loehrs notes that "none of the files identified by law enforcement's automated CPS software were found on Ocasio's computer," during her post-seizure examination of the computer.  *Id*. ¶ 24.  Although Loehrs does not directly explain the cause of this result, she suggests that this result might have occurred because the CPS software looked for evidence of "empty, partial, corrupted, canceled, [and] deleted" files on Ocasio's computer.  *Id*. ¶ 13.  This is significant, argues Ocasio, because the evidence of empty, partial, corrupted, canceled, and deleted files is only contained in "system files" that are not publicly shared.  *See* Mot. 12-13.  In other words, Ocasio argues that because the CPS software found evidence of empty, partial, corrupted, canceled, and deleted files, the CPS software must have searched beyond publically shared files and impermissibly scanned for private, non-shared computer files in violation of the Fourth Amendment.  *See id.*

The government argues that Ocasio has not carried his burden of demonstrating a Fourth Amendment violation.  *See* Resp. 19.  Specifically, the government contends that Ocasio's evidence is insufficient to show that the CPS software searched private files on his computer.

*See id*. at 19-20.  First, the government indicates that the initial CPS software scan of Ocasio's computer revealed thirty-five files known to be associated with child pornography.  *See* Search Warrant Affidavit 14-15; Resp. Ex. C, at 1-8 (indicating the thirty-five files along with other additional files identified by CPS on Ocasio's computer that might contain child pornography).[3] Next, the government rebuts Loehrs's claim that none of these files were later discovered on Ocasio's computer by criticizing Loehrs's techniques and procedures.  *Id*. at 19-20.  The government contends when it used more accurate techniques and procedures, its own post-seizure search of Ocasio's computer revealed eleven of these thirty-five files.  *See id*. at 20.  The government seems to explain that some of the remaining twenty-four files had been deleted or otherwise modified between the initial CPS software scan and the later post-seizure search.  *See id*.  Believing that there was no unlawful search, the government does not address either the independent source exception or inevitable discovery exception apply in this case.  *See generally* Resp.

The Court agrees with the government.  Ocasio has not demonstrated by a preponderance of the evidence that the government's use of the CPS software represents a Fourth Amendment violation in this case.  *See Brathwaite*, 458 F.3d at 376.  This is because Ocasio has failed to show that the CPS software searched any private files on his computer.[4]  The only evidence that Ocasio has offered that might show that the CPS software searched private files on his computer is that a number of files that the CPS software identified as present on his computer in April 2011 were not present on his computer in October 2011 when law enforcement entered his residence and searched his computer.  *See* Mot. 12-13.  While it is theoretically possible that the

---

[3] This spreadsheet indicates that the initial CPS scan occurred on February 14, 2011, not April 11, 2011. Neither party explains or questions this discrepancy.

[4] Because Ocasio has not demonstrated that CPS searched private files on his computer, the Court does not utilize the five factors articulated in *Runyan* to decide whether a scan of private computer files is itself a Fourth Amendment violation.  *See Runyan*, 275 F.3d at 457.

CPS software gave inaccurate results because it was scanning private system files, Ocasio has provided the Court with no evidence indicating that this is in fact the case. Ocasio is now in possession of the CPS source code and documentation but has not shown that the use of the CPS software violated the Fourth Amendment. *See* June 6, 2013, Order 10. There are many other possible reasons for the discrepancy between the results of the initial April 2011 scan and the October 2011 post-seizure search. One reasonable possibility is that in that half year between scan and search, Ocasio deleted, moved, or modified many, if not all, of the thirty-five files. Regardless, Ocasio has not demonstrated, as he is required to do, that the CPS software is the reason for the discrepancy. *See Brathwaite*, 458 F.3d at 376.

Simply put, Ocasio, with the CPS source code in hand has not submitted any evidence tending to show that the CPS software searched his private files, and therefore might have violated the Fourth Amendment. *See id.* Accordingly, because the information gathered by the CPS software was not in violation of the Fourth Amendment, the Search Warrant Affidavit based on this evidence was not improper, and the evidence gathered as a result of the Search Warrant is not subject to suppression. *See id.*

### B.   *Franks* Challenge

The Court next turns two Ocasio's second challenge to the Search Warrant, that the government improperly misled the Magistrate Judge who granted the Search Warrant in the Search Warrant Affidavit.

Affidavits supporting a search warrant are presumptively valid. *Franks*, 438 U.S. at 171. A defendant who challenges this presumption is entitled to an evidentiary hearing if he makes "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the

allegedly false statement is necessary to the finding of probable cause." *Id.* at 155-56. To prevail at the hearing, the defendant must establish the perjury or reckless disregard by a preponderance of the evidence. *Id.* at 156.

If a defendant prevails at the hearing, the court must "excise the offensive language from the affidavit and determine whether the remaining portion would have established the necessary probable cause." *United States v. Cavazos*, 288 F.3d 706, 710 (5th Cir. 2002) (citing *Franks*, 438 U.S. at 156-57; *United States v. Alvarez*, 127 F.3d 372, 374 (5th Cir. 1997)). However, if the defendant does not meet this burden, or if the warrant sufficiently demonstrates probable cause without the problematic information, the warrant does not violate the Fourth Amendment. *Id.*

In addition to intentionally false or reckless statements, omissions from a warrant affidavit may constitute improper government behavior. *United States v. Tomblin*, 46 F.3d 1369, 1377 (5th Cir. 1995) (citing *Untied States v. Stanert*, 762 F.2d 775, 781 (9th Cir. 1985)). A material omission may lead to an inference of recklessness. *Id.* (citing *United States v. Martin*, 615 F.2d 318, 329 (5th Cir. 1980); *United States v. Colkley*, 899 F.2d 297, 301 (4th Cir. 1990)). However, "[u]nless the defendant makes a strong preliminary showing that the affiant excluded critical information from the affidavit with the intent to mislead the magistrate, the Fourth Amendment provides no basis for a subsequent attack on the affidavit's integrity." *Id.* (citing *Colkley*, 899 F.2d at 303).[5]

---

[5] Although ultimately not material to the outcome in this case, the Court notes that a deliberate or reckless misstatement or omission by a governmental official who is not the affiant may nevertheless form the basis of a *Franks* claim so long as that official acted deliberately or with reckless disregard for the truth. *Hart v. O'Brien*, 127 F.3d 424, 448 (5th Cir. 1997), *abrogated on other grounds by*, *Kalina v. Fletcher*, 522 U.S. 118 (1997), (citing *United States v. Wapnick*, 60 F.3d 948, 956 (2d Cir. 1995); *United States v. DeLeon*, 979 F.2d 761, 764 (9th Cir. 1992); *United States v. Calisto*, 838 F.2d 711, 714 (3d Cir. 1988); *United States v. Pritchard*, 745 F.2d 1112, 1118 (7th Cir. 1984)). Indeed, the Supreme Court in *Franks* recognized the possibility of this situation stating that "police [cannot] insulate one officer's deliberate misstatement merely by relaying it through an officer-affiant personally ignorant of its falsity." *Franks*, 438 U.S. at 163 n.6.

In his Motion, Ocasio lists eight "suspect" portions of the Search Warrant Affidavit. Mot. 10-11.  These alleged omissions and misleading statements all relate to technical aspects of the government's investigative techniques employed in this case and how that information was communicated in the Search Warrant Affidavit.  *Id.*  At the April 4, 2013, hearing, which the Court held to specifically address the possible *Franks* issue, defense counsel failed to present any evidence to demonstrate perjury, reckless disregard, or intentional material omission on the part of the government agents.  *See Franks*, 438 U.S. at 156; *Cavazos*, 288 F.3d at 710.

At the commencement of the hearing, the Court reminded defense counsel that the hearing was to be evidentiary in nature to support the defense's claims of improprieties in the Search Warrant Affidavit.  First, defense counsel attempted to show a PowerPoint presentation which the Court stopped because the presentation was not evidence.  This was explained to counsel who failed to proceed with any offer of evidence. Because of this failure, counsel did not show by a preponderance of the evidence that the alleged omissions in the Search Warrant Affidavit were material or that they were intentionally made to mislead.  *See Tomblin*, 46 F.3d at 1377.  As for misrepresentation, falsities, or reckless disregard for the truth in the Search Warrant Affidavit, counsel presented no evidence of this either.

Accordingly, because Ocasio has not demonstrated perjury, reckless disregard, or intentional material omission on the part of the government agents in the Search Warrant Affidavit, he has not met his *Franks* burden.  *See Franks*, 438 U.S. at 156.  Therefore, suppression of the evidence discovered as a result of the Search Warrant is not appropriate.  *See id.*

**III.**   **CONCLUSION**

For the reasons stated above, the Motion, ECF No. 85 is **DENIED**.

**SO ORDERED.**

SIGNED this 16th day of June, 2013.


_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE