**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Case No. EP-11-CR-2728-KC-1** |
| | ) | |
| **ANGEL OCASIO** | ) | |

**RESPONSE TO GOVERNMENT'S MOTION TO EXCLUDE THE EXPERT**
**TESTIMONY OF TAMI LOEHRS, OR IN THE ALTERNATIVE, A REQUEST FOR A**
**_DAUBERT_ HEARING CONCERNING THE ADMISSIBILITY OF EXPERT**
**TESTIMONY**

Defendant ANGEL OCASIO ("Mr. Ocasio"), by his attorney, respectfully submits this

Response to Government's Motion to Exclude the Expert Testimony of Tami Loehrs, or in the

Alternative, a Request for a _Daubert_ Hearing Concerning the Admissibility of Expert Testimony

(herineafter "Motion"), and would respectfully show the following:

**I.      BACKGROUND**

In order to clarify the Government's presentation as to what transpired in regard to this

particular expert, it is necessary to recount precisely what undersigned counsel, and this expert,

have encountered in attempting to conduct the forensic examination in this case.

First, counsel for the Government has employed a discovery approach, allegedly rooted in

the simple declaration of 18 U.S.C. § 3509(m)(1)("In any criminal proceeding, any property or

material that constitutes child pornography (as defined by section 2256 of this title) shall remain

in the care, custody, and control of either the Government or the court."), that appears designed

to impose a substantial burden and additional cost on all defense experts endeavoring to conduct

forensic examinations.  Counsel for the Government has proudly declared that "we don't do

offsite reviews," which means absent the possibility of retaining a local forensic examiner, which

has not proved possible, any examination requires that the defense incur travel and lodging expenses with out of State experts for the simple act of gathering data placed in the Government's custody, when it is absolutely possible to transfer this evidence to HSI's local office local to the expert to avoid the same.  This "no offsite policy" virtually guarantees that the defense will have no visibility of Government experts and procedures while the Government insures, at great inconvenience and expense to the defense, that it will be aware of proceedings on the defense forensic examination.  Any claim by the Government that this result is purely coincidental would be disingenuous at best.  This further renders the Government sufficiently aware of the conduct of examinations to preclude the questioning that now proceeds in this case, as the Government knows full well what proceeded at HSI yet now claims non-specific issues[1] with those events without offering specific details as to what, specifically, it takes issue with in the steps performed there.

Second, the Government[2] has forced an agreement upon defense experts should they exercise the right of the defense to examine the evidence in the possession of HSI.  This agreement, in effect a contract of adhesion, directs that HSI be permitted to search any information gathered by an expert if such expert wishes to conduct a forensic examination of the

---

[1]The Government calls into question the steps performed by Ms. Loehrs's assistant but offers no detail as to why the conduct/methodology of this assistant, operating with HSI's own equipment, would be reasonably subject to question.  The effect is likely to invite this Court to drag an out of State expert to El Paso without a legitimate basis to do the same.

[2]Undersigned counsel remains unclear as to the origin of this 'agreement' as agents and counsel for the Government have offered differing response.  The source matters little as both are aware of the issue and continue to force the demands of this document.

evidence.  A basis for such an agreement appears nowhere in federal law.  HSI[3] claims that it is obliged to search this material to insure compliance with § 3509, however the simple fact is those knowingly not in compliance with § 3509 are in possession of child pornography and in violation of the law.  This contract, if it may be called that as it requires that the defense surrender rights of privacy to conduct a legally permitted review, is one more attempt to make this process more onerous for defense examiners.

Third, while the Government briefly indicates in its Motion that an individual went to HSI to gather the data in this case, it omits the fact that undersigned counsel needed to inform agents involved in this examination not to sit alone with the investigator in the examination room, approximately 5-feet from the defense investigator, purportedly as security to insure she did not attempt to remove child pornography[4] while she attempted to complete her task. Undersigned counsel actually had to repeatedly inform agents that it would be unnerving and distracting for an individual to simply sit on the other side of a desk while one is attempting to complete operations with forensic examination software.  This issue was resolved by undersigned counsel on day two of this examination process.

Fourth, in order to complete the forensic examination of three cases in December, the Government imposed the requirement that all three forensic examiners be present in the building. The evidentiary image files involved were offered on an external drive, and did not require the

---

[3]References to agents appear generally to provide an overview of events.  As undersigned counsel was witness to these events, he is well aware of the specific individuals involved.

[4]This proposition is curious as (1) this case involves the distribution of child pornography over peer-to-peer networks, which would appear to suggest this material would be easy to find and download if one were so inclined and (2) one skilled in forensic examinations would presumably not need to possess a child pornography file to analyze its properties.

coordination or interaction with agents to conduct the review.  Thus, in order to conduct this

with one trip rather than three different trips and the costs associated with this additional travel

and lodging, and thereby minimize costs to this Office on behalf of indigent clients, it was

necessary to de-conflict the schedules of all examiners with regard to their individual vacations

and operations.  As with the prior impositions, there is no rule, regulation or other legal

requirement that suggests this requirement, nor an apparent rational basis for the same.  Given

the fact that any individual could walk the evidentiary image files on a hard drive to the defense

investigator, one may reasonably interpret this as one more illustration of efforts to make this

process as difficult as possible while claiming the evidence is made meaningfully available to the

defense.  It was only when counsel threatened to file a motion demanding production of the

material after repeated attempts to schedule this visit that this issue resolved itself, only days

before the investigator was to travel to El Paso from Arizona.

Fifth, on a previous case, Ms. Loehrs was provided outdated and otherwise substandard

equipment by HSI to conduct her examination.  In an effort to address this concern and expedite

the review in this case, undersigned counsel requested that the expert be permitted to utilize her

personal equipment in conducting the examination.  He was informed by HSI and the

Government that the hard drive would need to be 'wiped' if used in conjunction with the

analysis.  In effect, HSI would need to delete all information once obtained, which would prove

problematic given the fact the analysis of the data could not and would not proceed at HSI.

Ultimately, the individual who traveled to El Paso capitulated to the demands of HSI and utilized

the HSI equipment and forensic software rather than her own equipment.  As such, to the extent

the Government claims it finds issue with the conduct of the examination in El Paso, which

4

utilized HSI's equipment and software, it necessarily impugns the Government's own forensic analysis.

Sixth, counsel for the Government claims this report was foisted on it at the last minute and requests that the expert be excluded as a consequence. Undersigned counsel, at substantial expense to the Office of the Federal Public Defender, contracted for this report that represents the only detailed analysis provided in this case. The Government, prior to this Court's order this past week directing a written summary, had offered nothing of analytical value that might remotely explain what its expert did in this case. She was told definitively on approximately May 1, 2013, that if she provided a summary defining the forensic analysis employed by her experts, then she could have this report of examination immediately.[5] On May 3, 2013, counsel for the Government acknowledged this conversation in her brief, but attempted to use the offer made in this case as grounds to obtain the report in a different case in which it was unclear if this expert would testify at all. *See* Govt's Motion to Compel Disclosure (Doc. No. 64) at 2, *United States v. Ferrell*, EP-12-CR-1477-PRM-1; Resp. to Motion to Compel at 3 (Doc. No. 66), *United States v. Ferrell*, EP-12-CR-1477-PRM-1 ("This particular response was offered by undersigned counsel in an unsuccessful attempt to end a contentious issue in Mr. Ocasio's case . . . , with specific reference to the Ocasio forensic examination report provided the Government provided equivalent disclosure of its expert testimony.").

In lieu of offering sufficient disclosure, counsel for the Government declined to offer this simple compliance and instead filed the Motion in that case, which was ultimately denied. As

---

[5]Her response to that invitation was "That's all they gave me," which is somewhat odd given the fact the attorney of record, not the agent or agents involved, is obliged to insure compliance with federal rules.

such, to the extent the Government claims it was entitled to earlier disclosure, it need only revisit this conversation in early May and its own unwillingness to provide the minimal disclosure requested in order to obtain this document as cause for disclosure at a later date.  The defense ultimately released this report of examination, without prior compliance on the part of the Government, in order to provide more modest notice in advance of trial.  This was completed despite the Government's non-compliance after the June 5, 2013 Notice, approximately 3 weeks prior to trial, filed in this case specifically demanding the documents in order to avoid delays at trial.

In sum, the Government may appropriately blame itself and its unwillingness to abide by rules of reciprocal discovery, a rule that triggers the defense obligation only after governmental compliance, before turning to the defense to explain the situation in which it now finds itself.  If it wishes to strike the defense expert on this ground, it may appropriately acknowledge its own failings and agree to the exclusion of its own experts based on the disclosure it provided only after the disclosure of the defense report and the intervention of this Court.  The Government, while content to deny the express reciprocal discovery requirements of Rule 16 requiring a request for disclosure by the defense, appears to expect the assistance of defense experts to develop its case while keeping the testimony of its own experts shrouded in mystery.  Given this posture, it approaches this Court with unclean hands when it asks for its remedy, and is ultimately entitled to none.

As this Court is now invited to review precisely what this expert has to offer under *Daubert*, it is asked to do so under the facts set forth above.  Having created an atmosphere of hostility in which reasonable requests and efforts to minimize costs are routinely denied, any

further effort to do so by the Government should be reviewed with skepticism as this represents one more opportunity to increase the costs to the defense in order to make forensic examination less palatable and push defense counsel to accept whatever the Government offers as complete and accurate, which it is not given the facts conveniently omitted from the FTK Report that might undercut its own *mens rea* theory.  Given the present funding limitations with this Office, this approach will inevitably implicate the Sixth Amendment right to present a defense as this approach may well discourage defendants from investigating the facts of the Government's case due to high costs associated with forensic examinations and thereby impair the defense provided.

  With regard to this *Daubert* challenge, the forensic software utilized in El Paso was HSI's own software and equipment, so there is no basis for challenge in that regard absent evidence that the results could not be obtained through use of that software.  The same would be true of the EnCase software utilized by Ms. Loehrs in Arizona as it, too, is the same software utilized by the examiners at HSI, as undersigned counsel has used the same versions in prior examinations at HSI.  All files identified in the report are resident in the evidentiary image files now in the custody of HSI, the details of which can be readily confirmed by review of that evidence using the same forensic software.[6]  As such, the only relevant question for this Courts's resolution is whether the files identified support the opinions proposed.  It is respectfully submitted that they are supported, and are entirely consistent with *Daubert*.

---

   [6]Despite the length of this report, the files identified and facts contained therein could be confirmed within 4 hours by a competent examiner.  This requires no more than selecting the individual files and reviewing the properties of the file in either forensic software employed.  As counsel for the Government offers no hint of a defect in the file details provided, this Court can reasonably infer that the file details are accurately presented.  The only issue for this Court's review would appear to be the opinions based thereon, which does not implicate conduct of the forensic examination itself.

Finally, this Court is asked to consider that the Government's Motion in this case is a carbon copy of its motion filed in *United States v. Cervantes*, EP-12-CR-217-KC. The Government filed a largely identical Motion (Doc. No. 54) directed to the same expert and her assistant, and offered identical legal arguments. This Court carefully considered those arguments in its Order (Doc. No. 64), and directed a hearing on the methodology of Ms. Loehrs. Following a hearing, this Court issued an Order (Doc. No. 81) setting parameters for trial and the testimony of Ms. Loehrs. The Government, despite this definitive statement by this Court, makes little mention of *Cervantes* and the fact it raised identical arguments, save two recitations to the portions of this Court's Order it apparently embraces.

## II.     LEGAL ARGUMENT

The Government's arguments do not ultimately merit review under *Daubert*. Each argument shall be addressed in turn.

### A.  Ms. Loehrs Does Not Question the Reliability of Her Own Findings

The Government offers this argument based on a disclaimer provided by Ms. Loehrs indicating that indicates the report sets forth "PRELIMINARY RESULTS BASED UPON A LIMITED OFF-SITE FORENSICS EXAMINATION OF LESS THAN 40 HOURS." Mot. at 2. It should first be noted that the Government in no place attempts to quantify the work of its own forensic examiner, or the time spent on this case in producing the limited findings of the FTK Report offered. Given the dearth of information provided in the FTK Report, in contrast to Ms. Loehr's report with detailed file references, it would appear local agents spent far less time than Ms. Loehrs on their examination. If such is a basis for exclusion under *Daubert*, then the Government's experts face a more daunting task in justifying the admissibility of their testimony.

8

In contrast, if the HSI forensic examiners claim more time was devoted to the forensic examination in this case, then the sparse work product would suggest incompetence and a lack of qualification as a forensic expert.  Neither proposition need be true, as the Government's argument is unfounded.

As observed by J. Craiger, Assistant Director of the National Center for Forensic Science, "Simple cases where we know exactly what evidence we are looking for may take a half day. Complicated cases involving multiple hard drives and where we are not exactly sure what constitutes evidence may take weeks or even months."  J. Craiger, Computer Forensics Procedures and Methods 22 (available at http://www.ncfs.ucf.edu/craiger.forensics.methods.procedures.final.pdf).  This disclaimer, offered in a work product at the request of a defense attorney, stands for no more than the embodiment of scientific methodology.  If a forensic examiner elects to pursue a theory that a virus is responsible for the contents of a computer, then that task requires a complex inquiry calling on numerous file trails and characteristics well beyond the simple search and find approach embodied in the FTK Report.  In order to determine if a computer was infected by a virus, forensic examiners cannot simply run common antivirus software (which assesses current virus presence), but rather must analyze files typically impacted by viruses in an effort to profile the same.  Ms. Loehrs does not presently claim she had sufficient time for such an examination, thus offers no opinion on the subject.  There are a variety of other possible theories that may be pursued by a forensic examiner, for example activity by computer hackers, that may similarly require substantial additional examination.  Ms. Loehrs indicates that the contract limitations did not permit such an inquiry.  As such, she offers this declaration in lieu of silently implying that

an opinion addressing all possible theories and opinions has been rendered.

It suffices to say that Ms. Loehrs supports all findings with specific computer file references, and does so to a far greater degree than the Government has provided in its own report.   If the Government finds this entry in her report problematic, then the better question would appear to be why it does not include the same in a report it intends to offer the jury as comprehensive.   Similarly, if this honesty and disclosure is curious, then such might explain why the Government offers a report from its forensic examiner that excludes significant details, such as the fact that certain files are deleted and therefore not visible to a user lacking forensic software.   In any event, these statements should be in no way troubling to this Court and certainly offer no basis for a *Daubert* challenge.   To the contrary, they confirm her methodology and standards in disclosing that the report does not purport to address certain issues as a consequence of time and contract limitations.   This is no way undercuts her finding and/or opinions now offered in this case.

**B.  Government's Concerns Do Not Present a *Daubert* Problem**

The Government argues that "the proposed testimony contains logical gaps, legal conclusions and may mislead the jury."  Mot. at 5.  This argument appears to be a paraphrase of this Court's Order in *Cervantes*.  However, in the present case the opinions are distinguishable from *Cervantes* and this conclusion finds no application.

The Government adequately describes the three-part *Daubert* standard.  *See, e.g., Roman v. Western Mfg., Inc.*, 691 F.3d 686, 692 (5th Cir. 2012)(describing requirements as expert qualification, methodology employed and whether testimony would assist trier of fact).  It does not apparently argue Ms. Loehrs is unqualified.  The focus is therefore on the remaining

10

concerns.

As stated above, the methodology employed is the same as that employed by Government forensic experts, involving the same version of the forensic software that largely automates the forensic examination.  The evidentiary image files were produced by the Government's expert, and the defense was offered only these evidentiary image files to conduct its examination.  The Government offers no specifics as to how its concerns specific to the conduct of its examination are possible without impugning its own evidence.  Instead, it attacks collateral issues and avoids this rather obvious problem that would invalidate its own methodology and evidence if an issue at all.

With regard to Ms. Loehrs offering testimony as to the age of individuals at trial, such is not the case.  She actively acknowledges that no expert may offer such an opinion.  As this report represents a defense work product that will not be offered to the jury, notes are offered in the event that issue is of relevance to counsel based on the observations of the assistant performing the data capture at HSI.  The scope of this work was dictated by undersigned counsel, and this Court may rest assured that contesting whether the material was or was not child pornography was not a component of that charter, and is not an issue counsel intends to pursue at trial. Having reviewed this material for content independently and prior to the date of this examination, undersigned counsel had no intention of obtaining confirmation of his findings. Moreover, such observations do not require advanced forensic training as one merely needs to look at the contents and opine based on general perception.  The fact that an opinion is offered in a report, when such may be useful to the attorney requesting the report, is neither here nor there in the *Daubert* analysis.  Nor is such the hallmark of a sound forensic examination when anyone,

11

trained or untrained, may view these images and offer observations on the same. Stated otherwise, there is nothing that suggests the impermissibility of an assistant reviewing the content of images and videos contained in memory and offering an observation on the content of the same to the examiner. This act simply requires no expert training.

The Government takes greater issue with the fact Marlene Pulido, Ms. Loehrs's assistant, conducted the data capture in this case.[7]  Mot. at 8-9.  Agents reviewed the data obtained by Ms. Pulido prior to her departure, but curiously offer no declaration as to how that process was in any way deficient.  This process, for the three individual cases, took approximately 8 hours per case. The information acquired, representing the evidentiary image files without the content of the child pornography as such would violate the law, was returned to Ms. Loehrs in Arizona for her analysis.  HSI has the complete evidentiary image files in its possession and is capable of confirming the existence of the files identified and identifying any errors, yet unsurprisingly points to no element of the substantive report that might be unsubstantiated.  Instead of hard data, the Government offers no more than speculation and conjecture.

Ultimately, it appears the Government contests the approach, which, in fact, represents no more than employment of the largely automated forensic process utilizing the same forensic software it employs in its own forensic examinations.  Furthermore, despite the Government's apparent contention, there is no requirement that a forensic examiner view the content of child pornography as the typical fodder of computer forensic examination is the information associated with the same based on the files identified in charges brought by the Government.  Finally, there

---

[7]This Court alluded to difficulties encountered in the data capture process in *Cervantes*. Order at 2.  There were no difficulties similarly encountered in this case.

is no preclusion on an assistant performing a predetermined data capture provided the expert offering the opinion conducts the analysis of the data captured.   The Government cites no legal authority for such a requirement, Mot. at 9, instead attempting to force an additional expert characterization on an assistant employed to conduct a specific task for which she was trained in an effort to create an issue where there is none.   Ultimately, this Court has reviewed these concerns and rejected the same in *Cervantes*.   As no effort is made to support a contrary conclusion, this Court is respectfully asked to apply its prior decision to this scenario.

Apart from the involvement of Ms. Pulido in the subject forensic examination, the Government argues that Ms. Loehrs's testimony would be directed to the ultimate issue in this case.  The Government argues that the witness impermissibly would offer an opinion on an ultimate issue, Mot. at 9, specifically that Ms. Loehrs would actually testify that Mr. Ocasio did not knowingly distribute, receive or possess child pornography in violation of Federal Rule of Evidence 704(b).  The testimony of Ms. Loehrs would include references to specific files that may suggest a lack of awareness generally.  The files referenced spell this out clearly.  It is significant that the Government's own FTK Report, which specifically excludes information as to whether files were deleted, likely constitutes an implicit acknowledgment that such information would undercut its own theory that Mr. Ocasio was aware of the contraband in its presentation on this ultimate issue.  If this approach is incorrect, then the Government's implicit opinion, specifically a reference to voluminous files and his personal files, would be no more appropriate as they, too, are directed to knowledge.  In such case, it should matter little that the opinion involved is implicit rather than explicit.

Ms. Loehrs does not claim to know what Mr. Ocasio was actually thinking based on a

forensic examination, and will not offer an opinion on that specific question.   She may

appropriately offer an opinion regarding characteristics of the forensic examination that cites

facts that would not be obvious to the average user of a personal computer.  This is consistent

with the law applicable to drug courier profiles, in which "law enforcement witnesses are . . .

allowed to give testimony about 'the significance of certain conduct or methods of operation

unique to the drug business." *United States v. Montes-Salas*, 669 F.3d 240, 248 (5th Cir. 2012).

This is no different than providing details from a forensic analysis that suggest file behavior that

may not be obvious to the average computer user.  Continuing with the drug courier profile, an

expert opinion offends Rule 704(b) when "it amounts to the 'functional equivalent' of an opinion

that the defendant knew he was carrying drugs."  *Id.* (internal quotation marks omitted).  If Ms.

Loehrs were to make an outright declaration that Mr. Ocasio was unaware of the files at issue,

rather than articulating facts identified in this forensic examination that may not be obvious to

the average user, then there may be a concern under Rule 704(b).

Stated otherwise, the issue of whether an opinion offends Rule 704(b) turns on whether

the opinion impermissibly states a defendant "did have" a particular awareness versus whether

that same individual "could have" knowledge.  *See United States v. Levine*, 80 F.3d 129, 134 (5th

Cir. 1996)("[U]nder Rule 704(b) hypothetical questions mirroring the fact patterns of the

evidence in the trial case are violative of the rule when the answering testimony contains a

necessary inference as to whether the defendant *did nor did not have* the mental state or condition

constituting an element of the crime charged or of a defense thereto." (Emphasis added.)); *United

States v. Dotson*, 817 F.2d 1127, 1132 (5th Cir. 1987), *vacated in part on other grounds* , 821

F.2d 1034 (5th Cir. 1987)("[R]ule 704 prohibits experts from testifying as to the 'ultimate legal

issue'—whether the defendant did or did not have the requisite state of mind—yet permits experts to 'present and explain' their diagnosis, that is, their analysis of the facts based on their special knowledge qualifying them as experts.").  In this case, the opinion testimony will be limited to whether an individual could have overlooked the evidence on his computer, and will not touch upon whether Mr. Ocasio did, in fact, overlook this evidence.  This falls entirely within the bounds of Rule 704(b).

In this case, the evidence addressed by Ms. Loehrs ultimately focuses on (1) multiple users of the computer hard drives seized and (2) explanation as to why evidence identified by the Government may not be obvious to the average user.  The Government offers no objection to the evidence of multiple users.  It is respectfully submitted that there can be no issue with the second opinion, provided it is not directed to what Mr. Ocasio did or did not know.  If this form were to be considered objectionable to this Court, then Ms. Loehrs could offer the exculpatory factual underpinnings for the opinion in the same form as the Government now offer the inculpatory facts directed to the same issue.

### C.  This Court's Order in *Cervantes*

As this Court will likely find the issues in *Cervantes* and this case similar, it is respectfully asked to consider the following with regard to the rulings contained therein.

First, this Court ruled that Ms. Loehrs's statement that "the fact that child pornography files exist on a computer is not evidence that the user of that computer knowingly received or possessed those files" was problematic.  *Cervantes* Order at 7.  There can be no disagreement to the proposition that an expert does not define what is an is not evidence is correct.  *See id.* at 8.  With that said, despite this regrettable choice of phrasing, the import of her

opinion is that files may reside on a computer without the awareness of its owner for any number

of reasons.  She then cites circumstances in this case that may suggest a lack of awareness.  As

discussed previously, this falls within the standard of 'could' rather than 'did' under the Rule

704(b) discussion above, and constitutes appropriate expert testimony.

In this same discussion, this Court expresses concern that "inferring knowledge from

possession is a permissible inference, and an expert's announcement that jurors must not draw

this permissible inference would undoubtedly confuse the jury." *Id.*  As this proposition follows

this Court's acknowledgment that "where a defendant's control of the computer was not

exclusive, the presence of prohibited images on a defendant's computer may not be conclusive

evidence of knowledge," it is worthwhile to add that "this inference cannot be sustained if the

defendant shared joint occupancy of the place." *United States v. Woerner*, 709 F.3d 527, 536

(5th Cir. 2013).  As such, the absence of exclusivity with regard to the place eliminates the

possibility of the presumption of knowledge.  With regard to any expert opinion, the moment

evidence of joint possession arises, there is legally no danger with regard to opinion treading on

this inference as a jury may not presume knowledge.

This Court also raised concerns as to cumulative testimony.  *Cervantes* Order at 4.

Specifically, this Court held "certain portions of Ms. Loehrs's evidence will only be admitted if,

during the government's case in chief, the government disputes or fails to address those facts

about which Ms. Loehrs is capable of testifying." *Id.* at 5. "Rule 403 provides relevant evidence

may be excluded if it is a *needless presentation* of cumulative evidence." *United States v.

Haynes*, 554 F.2d 231, 234 (5th Cir. 1977).  Should the Government limit its discussion on a

particular topic, but nonetheless advance facts offered with its own slant, then it would appear

16

appropriate to present the defense slant on those facts, regardless if those facts may be considered in some way cumulative to the facts offered by the Government.   It is assumed this Court would not impose such a limitation on the defense merely because the Government happens to touch on a topic in its case-in-chief.  If the repetition was of an undisputed fact, then such would appear to constitute the sort of needless presentation addressed by this evidentiary limitation.

## III.    CONCLUSION

For the foregoing reasons, it is respectfully submitted that the Government's Motion should be denied.

Very truly yours,

MAUREEN FRANCO
Federal Public Defender

/s/

MICHAEL GORMAN
Assistant Federal Public Defender
Western District of Texas
Federal Building
700 E. San Antonio, D-401
El Paso, Texas 79901
(915) 534-6525

*Attorney for Defendant*

17

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of June, 2013, I electronically filed the foregoing with the Clerk of Court using CM/ECF system which will send notification of such filing to the following:

J. Brandy Gardes
Assistant U. S. Attorney
700 E. San Antonio, Suite 200
El Paso, Texas 79901


/s/
_____
Michael Gorman
Attorney for Defendant

18